BOYCE *v.* BOYCE.[1]

TENANTS IN COMMON — ACCOUNTING — LOGGING CONTRACT — LOG SCALE—EXPENSES—SUPERINTENDENCE—INTEREST.

   * A. and B. were tenants in common of a large tract of pine land.   B. agreed to lumber the timber, see to its manufacture and sale, and account to A. for the proceeds.

   1. *Held*, that it was the duty of B. to keep an accurate account of his expenses, and of the receipts and expenditures, and, having failed to do so, he will be allowed only for the cost of lumbering as determined by the testimony of experienced loggers of his class.

   2. In logging operations, the log scale was contemplated, in the absence of an express agreement.   Where there was no log scale by B., and a scale was made by the common carrier which transported the logs, and was known to and acquiesced in by both A. and B., that scale must be adopted in determining the number of feet for which B. is to be allowed for lumbering.

   3. The construction of a railroad into the woods, for lumbering purposes, was a part of the expense to be included in lumbering; and, where such cost was included in the estimate of experienced loggers, no amount will be allowed for its construction, especially in the absence of any *data* showing the cost of construction.

   4. B. kept no account of his time or of expense in superintending the manufacture of the lumber, etc.   He was at the same time engaged in other work.   *Held*, that he could not recover for such services and expenses, for the reasons stated in *Hake* v. *Coach*, 114 Mich. 558.

   5. B. cannot be allowed for the pay of an accountant employed to make up statements, after the controversy arose, from the books of the mills where the lumber was sawed and sold.

   6. After B. had made sales sufficient to repay him for moneys advanced, he must pay interest on quarterly balances.

Appeal from Roscommon; Sharpe, J.   Submitted June 8, 1900.   Decided October 31, 1900.

[1] Rehearing denied November 19, 1900.
* Head-notes by GRANT, J.

Bill by George Boyce and Nancy Boyce, survivors of themselves and William Boyce, deceased, against Jonathan Boyce and Isabella J. Boyce, for a partition of certain lands and for an accounting. From the decree rendered, complainants appeal. Modified.

In 1880, complainant George, his father and brother, and the defendant Jonathan invested $62,000 in purchasing the entire of four sections, and nearly all of another section, of pine lands. Complainant and his father and brother put in $31,000, and the defendant Jonathan put in a like amount. The title was taken in the name of complainant's father and the defendant, each becoming the owner as tenant in common of the undivided one-half part of the said lands. Complainant's father and brother died, and he has succeeded to the entire interest. Jonathan was an old and experienced lumberman. Complainant had had no experience in lumbering operations, except as a laborer. In 1890 an arrangement was entered into by which Jonathan agreed to cut, haul, and sell the timber.. The agreement unfortunately rested entirely in parol; but there is no substantial difference as to what the original understanding was, viz., that defendant was to cut, haul, and sell the logs, and account to complainant therefor, paying him his share after deducting all costs. With this understanding Jonathan entered upon sections 13 and 23 in September, 1890, and commenced lumbering operations. Jonathan now claims that some months afterwards, and after a very large portion of the timber had been taken from these two sections, he made an agreement with George for $2.50 a thousand for lumbering the logs. Complainant insists that no such agreement was made, and that all the talk about a charge of $2.50 per thousand was upon the basis that that was the actual cost, in accordance with the original understanding. In February or March, 1891, instead of selling the logs, Jonathan deemed it advisable to ship them over the Michigan Central Railroad to Saginaw and Bay City, have them

manufactured into lumber, and sell the lumber. He thereupon made an arrangement in his own name with the Michigan Central Railroad Company by which the company agreed to extend its road through these lands, and to other lands of the defendant, and transport the logs for $2.50 per thousand to Saginaw and Bay City. He also made arrangements with certain mills to saw the logs at a given price per thousand. These arrangements were ratified by George, and the timber was taken from these two sections, converted into lumber, and sold by Jonathan. In August, 1891, complainant demanded a statement of account from Jonathan. To this demand Jonathan paid no attention, and in January, 1892, complainant commenced this suit to obtain a partition of the lands and an accounting for the timber sold. By stipulation the circuit judge acted also as commissioner and took much of the testimony, though a large portion was taken by deposition. The circuit judge made a finding, to many items of which complainant excepted, and now appeals from the decree of the court below.

*Bunker & Carpenter*, for complainants.

*Simonson, Gillett & Clark* (*Humphrey & Grant*, of counsel), for defendants.

GRANT, J. (*after stating the facts*). 1. The principal and most important question of fact in the case is, What was the contract between the parties? Upon the answer to this question depends the basis for the accounting. The learned circuit judge found that defendant Jonathan was a jobber, and lumbered this land for $2.50 per thousand. We cannot agree with him in this finding. The defendant filed an original and an amended answer. In neither of these is any reference made to the contract upon which he now claims, and which was made the basis of the accounting and of the decree. His original answer is very brief. In it he stated that he cut, manufactured, and disposed of the timber under a certain contract made between complainant and his brother William and him-

self.   He says nothing whatever as to what the contract was, except to allege that "sufficient of said logs and lumber has not been sold to pay the expense of cutting and manufacturing the same, as agreed there should be." His amended answer was filed September 7, 1897, under oath.   In this answer he states the arrangement as follows:

"Defendant Jonathan Boyce, for further answer, says that, after the purchase of said lands, for a number of years they did not lumber them, or any part thereof, although they were only valuable for the pine timber thereon; that the defendant frequently talked with said Edward Boyce and complainants in regard to the said lands and the lumbering of the same; that it was finally agreed by said complainants George Boyce and William Boyce and defendant that defendant should go on and lumber the said lands as economically as possible, and account to them for any profits that might be coming to them on the close of the lumbering operations; that defendant should be allowed reasonable compensation out of the joint property for his services in looking after the said lumbering operations, and that he should pursue such a course as in his judgment would be for the best interests of all concerned."

He then claims in his answer $50,000 for his services in making the purchase, superintending the lumbering operations, and selling the lumber.

The bill of complaint does not appear to be based upon any theory of any contractual relation between complainant and defendant.   It merely alleges the joint ownership of the lands; that defendant has entered upon them, and cut a large amount of timber, and converted the proceeds to his own use; the demand for, and the refusal to render, an account.   The bill undoubtedly is not as specific as it should be.   It charged the defendant with the conversion of the timber.   The bill may be susceptible of the theory that the defendant was a trespasser, cutting the timber without authority, or that he had cut it by authority, and then converted it.   As above shown, the answer simply states that there was a contract, while the

second answer sets out the arrangement in full. We are of the opinion that all defects in the pleadings should be overlooked, and the case disposed of upon the merits and the contract as established by the evidence.

On November 16, 1896, defendant filed a verified discharge account, in which he charged $12,000 for his services in "superintending the cutting of the logs, manufacturing them into lumber, selling and shipping the same, and collecting the pay therefor." He also charged for making the logging road and other expenses; but the account contains no charge for cutting and hauling. On September 7, 1897, he filed an amended discharge account, in which he charges $20,000 for "superintending and lumbering said lands," etc. In this account is an item as follows:

"Amount paid by defendant Jonathan Boyce for logging the timber on said lands, 27,123,229 feet, at $2.50 per M., $67,808.07."

We are of the opinion that no contract existed such as defendant claims. Whatever assent complainant gave to the proposition of defendant to charge $2.50 per thousand was clearly, in our judgment, upon the basis that that represented the actual cost. At that time defendant was, or ought to have been, in position to show to complainant the actual cost of lumbering, but did not. Defendant, in his direct examination, being asked to state the arrangement, said:

"They told me to go on and cut the timber, and dispose of it the best I could; that they knowed that what was best for my interest was best for them, and I would do the best I could. * * * I do not know as I could really state word for word, but it was generally that we would go on and cut the timber, and sell the logs if I could, and do the best I could, just as though it was my own, because they knowed what was for their interest was for my interest, and I would do the best I could; and I did so to a cent, all through."

We find, therefore, the fact to be that defendant was intrusted with the property of the complainant, with the

agreement to cut, haul, manufacture, and sell it, and account to complainant for the proceeds after deducting expenses.

2. It is of little consequence what name we attach to the relation of the parties. Defendant admits it was his duty to account. Under his agreement, it was his duty to keep an accurate account. If he cut and disposed of this property as a tenant in common, it was as much his duty to keep an account of expenses as if he were a trustee or occupied other fiduciary relations. The case is directly within the principle of *Darrah* v. *Boyce*, 62 Mich. 480 (29 N. W. 102).

Defendant testified as follows:

"*Q.* Why didn't you keep an account of what it cost you?

"*A.* Well, I cannot, of course— I might have done business a little loose there, but it was all for myself, and all the account I kept was for the expense of my men, labor, and supplies.

"*Q.* Up to the time you made the bargain with them to put it in for two and a half, and they said it was all right, did you keep all your bills?

"*A.* Oh, I have got them yet. I have got all the supply bills and all the checks. I believe I have got down in my office a million checks there that I have paid out in my time."

The defendant produced no account, and gave no evidence of the cost of this work, except to give his opinion that it cost him at least $2.50 per thousand. Defendant was a man of large experience in lumbering operations. It seems incredible, under his own statement of the arrangement, that he should not have appreciated the necessity of keeping and rendering an account. But, whatever the reason may be, he alone must suffer the consequences. He has failed to render an account of the cost. We must therefore look to other testimony of experienced loggers of his class to determine what should be allowed the defendant for logging. Several experienced and skillful loggers who were familiar with the lands, and who had logged

upon lands similarly situated, placed the cost of logging at from 90 cents to $1.50 per thousand. These witnesses testified to what it cost them per thousand upon the lands where they had logged. We are satisfied, from all the testimony given upon this point, that $1.50 per thousand is a very liberal allowance for the cost of lumbering.

3. Defendant made no scale of the logs. Complainant was aware of this. The Michigan Central Railroad Company employed competent scalers, who scaled them as they were shipped, and made the amount 24,608,730 feet. Complainant knew of this scale, and, by his silence at least, assented to it. The lumber scale at the mills amounted to 27,153,311 feet. The court adopted the latter scale as the one to be used in the accounting. We think he was in error. The evidence establishes the fact that, in logging operations, the log scale is contemplated, in the absence of an express agreement. If defendant had kept and rendered an account of his expenses, this question would not have arisen. It is certainly just and equitable, therefore, that he should receive compensation according to the usual scale. In computing this amount, therefore, the log scale must be adopted.

4. The court allowed defendant $2,000 for building a logging road. In logging operations the cost of such road is included in the cost of logging. The testimony as to the cost is entirely unsatisfactory, and the judge so held, but concluded that it was in the neighborhood of $4,000, and, because it was built more substantial and at a greater cost than the usual road, he fixes the cost to be borne by the joint lands of complainant and defendant at the sum of $2,000. There was no agreement in regard to its construction. Defendant owned other large tracts of land to be benefited. The witnesses included its cost in their estimates, which were based upon actual experience. We see no reason why he should be allowed this amount. It must therefore be stricken from the account.

5. The circuit judge, upon the basis that the defendant was a jobber, allowed him "for services and expenses in

superintending the manufacture of the lumber, assisting in the sale thereof, and for general supervision of the operation of the same, $4,000." Here again no *data* are given for expenditures or for services at all reliable, and no account thereof was kept by the defendant. This item comes expressly within the rule in *Hake* v. *Coach,* 114 Mich. 558, 566 (72 N. W. 623), and must be disallowed.

6. After this controversy arose, defendant employed one Flood, an accountant, to make up statements, from the books of the mills where the lumber was sawed, of the amount manufactured and sold. Flood was not the regular bookkeeper of defendant, for he kept no books. Flood kept the books of one Welch, a mill owner, who sawed some of the lumber. Flood testified that in November, 1892, he was "called in by defendant to make complete copies of all his accounts in this matter." We do not think this was an item which should be charged against complainant. It is therefore rejected.

7. After stating the claims of the parties in regard to interest, the circuit judge allowed interest to complainant on the amount found due from January 1, 1893. This was about the date of the last sale of lumber made by defendant. Under this finding, defendant could have retained in his hands all the moneys until all the lumber was sold and the account balanced. If there had been no disagreement between the parties, defendant would undoubtedly have continued these operations for a year or two longer. We do not think it was contemplated that he should retain these large amounts of money in his hands until the final closing out of the business. It was unnecessary for any protection to him for moneys advanced in the operations. It is just and equitable that he should have accounted at stated periods, and paid over the balance to complainant. He commenced to receive money from sales in March, 1891. It increased monthly until July, when he received $22,281.45. He expended a considerable amount in his logging operations, for which he would be entitled to interest, but we have no means of

determining that amount.    We think it just that complainant should receive interest from August 1, 1891, and that defendant should pay interest thereafter on quarterly balances.

There are several other items to which exception was taken, but as to them we sustain the conclusion reached by the circuit judge.

Decree modified in accordance with the above opinion, with costs to complainant.

The other Justices concurred.