GORDON SEL-WAY, INC v SPENCE BROTHERS, INC

Docket No. 102655. Submitted March 7, 1989, at Lansing. Decided May 15, 1989. Leave to appeal applied for.

Gordon Sel-Way, Inc., a subcontractor on a construction project, sought arbitration of certain claims it had against the general contractor of the project, Spence Brothers, Inc., in accordance with a contract provision providing that all claims and disputes would be submitted to arbitration. A three-member arbitration panel awarded Gordon Sel-Way $1,572,442.12 plus $343,077.79 in interest. Gordon Sel-Way thereafter sought confirmation of the award in Washtenaw Circuit Court. Spence Brothers filed an application to vacate or modify the award, arguing that the award should be vacated by reason of the partiality of one of the arbitrators or the failure of the arbitrators to state which of the multiple claims formed the basis of the award or that the award should be modified by deleting the interest portion of the award. The circuit court, Edward D. Deake, J., refused to vacate the award, but did modify the award by deleting the interest portion of the award. However, the court did allow interest at the rate of five percent per annum from the date of the arbitration award. Spence Brothers appealed from that portion of the judgment which confirmed the award except for the interest provision. Gordon Sel-Way cross-appealed from that portion of the judgment relating to the interest to be paid.

The Court of Appeals *held:*

1. Spence Brothers, Inc., had constructive knowledge prior to the arbitration proceedings that a consulting firm in which one of the arbitrators had an interest and for which the arbitrator had acted as its attorney had named Spence Brothers as a defendant in a prior action, since two of the officers of Spence Brothers were aware of those prior proceedings prior to the arbitration proceedings at issue here. Failure to object to that arbitrator on the basis of the prior association in a timely fashion acts to waive the right to seek vacation of the award on

REFERENCES

Am Jur 2d, Arbitration and Award §§ 97-101, 124 *et seq.*, 181.

Setting aside arbitration award on ground of interest or bias or arbitrators. 56 ALR3d 697.

the basis of a possible bias or conflict of interest. Further, the record fails to support any claim of actual bias in that Spence Brothers was named a defendant in the prior action by the arbitrator only because, as the general contractor, it might have been holding funds payable to the subcontractor that the arbitrator had been suing and that matter had been settled prior to the arbitration proceedings in this matter.

2. The circuit court properly deleted the interest award contained in the arbitration award, since the obligation to pay occurred only upon the arbitration award and the contract mandating arbitration of all claims and disputes made no provisions for interest prior to the award.

3. The interest on a judgment statute is inapplicable since that provision applies only to money judgments recovered in civil actions commenced in a court. The applicable statutory provision provides that interest on arbitration awards shall accrue on the date of the award and is payable at five percent per annum.

Affirmed.

1. ARBITRATION — CONFLICT OF INTEREST.

An arbitrator's failure to disclose facts which might reasonably lead to an impression of bias constitutes a ground for vacating an arbitration award; however, the failure to disclose such facts does not per se require that the award be vacated.

2. ARBITRATION — WAIVER — ARBITRATORS — CONFLICT OF INTEREST.

The right of a party to an arbitration proceeding to seek vacation of an arbitration award on the basis of the possible bias of the arbitrator is waived where the party has knowledge of the tainted relationship or interest of the arbitrator prior to the arbitration hearing and fails to object to the use of that person as the arbitrator.

3. ARBITRATION — CORPORATIONS — ARBITRATORS — CONFLICT OF INTEREST.

A corporation which is party to an arbitration proceeding is deemed to have knowledge of the potential bias or conflict of interest of the arbitrator where any officer of the corporation had knowledge of the facts on which the claim of bias or conflict of interest is based.

4. ARBITRATION — ARBITRATION AWARDS.

An arbitrator has no duty to make a separate award for each claim; accordingly, an award need not be vacated because the award did not list the amount of the award attributable to each claim that was made part of the arbitration proceedings.

5. ARBITRATION — INTEREST.

> Interest on an arbitration award is governed by the statutory provisions relating to actions founded on contracts and is to be awarded at the rate of five percent per annum from the date of the award; the statute allowing prejudgment interest and interest on a money judgment in a civil action does not apply to an arbitration award and the judgment confirming the award (MCL 438.7, 438.31, 600.6013; MSA 19.4, 19.15[1], 27A.6013).

*Fitzgerald, Peters & Dakmak, P.C.* (by *Neill T. Peters* and *Stuart J. Snider*), for plaintiff.

*Federlein, Grylls & Keranen, P.C.* (by *Walter J. Federlein*), for defendant.

Before: SHEPHERD, P.J., and CYNAR and SAWYER, JJ.

SHEPHERD, P.J. This case involves a construction contract dispute between a general contractor, defendant Spence Brothers, Inc., and a subcontractor, plaintiff Gordon Sel-Way, Inc., which was submitted to arbitration pursuant to the terms of their October 9, 1978, contract. A three-member arbitration panel awarded $1,572,442.12 plus $343,007.79 in interest to plaintiff on November 5, 1986. Two days later, plaintiff commenced this action under MCR 3.602(I) in Washtenaw Circuit Court to confirm the award. Defendant responded by filing an application under MCR 3.602(J) and (K) to vacate or modify the award. Pursuant to a judgment dated July 24, 1987, and related opinions and orders, the trial court confirmed the award of $1,572,442.12, but vacated the interest award because there was no contractual basis for pre-award interest. However, the trial court allowed interest of five percent per annum commencing from the date of the arbitration award and continuing until payment. Defendant appeals as of right, seeking to vacate the award due to alleged "evident partial-

ity" by one of the arbitrators and the failure of the arbitrators to state which of plaintiff's multiple claims were the bases of the award. Plaintiff cross-appeals from the interest award. We affirm.

I

We first consider defendant's assertion that the award should be vacated due to alleged "evident partiality" of arbitrator Charles R. Scales, Jr. The trial court's authority to vacate the arbitration award stems from MCR 3.602(J)(1)(b) which states that "the court shall vacate an award if . . . there was evident partiality by an arbitrator." Here, as in other arbitral proceedings, the procedure established to safeguard the arbitral process against claims of partiality is one of disclosure. Under Rule 19 of the American Arbitration Association's Construction Industry Arbitration Rules, which governed the parties' arbitration, the AAA determines whether an arbitrator should be disqualified upon disclosure by the appointed arbitrator.

The problem in this case is that arbitrator Charles Scales did not fill out and return the AAA's required "notice of appointment" form which required a disclosure of "any past or present relationship with the parties or their counsel, direct or indirect, whether financial, professional, social or other kind." The information that the defendant claims should have been disclosed at the time of Charles Scales' appointment in November, 1985, was his association with the consulting engineering firm of Scales & Associates, Inc., and the fact that Charles Scales filed a lawsuit as the attorney for the Scales consulting firm against the defendant corporation in 1984. Charles Scales' status as the president of the consulting firm was disclosed in his biographical sketch provided by the AAA to

the parties and, hence, the central issue before us is whether Charles Scales' failure to disclose that he filed the lawsuit on behalf of his consulting firm is grounds for vacating the award. We conclude that it is not.

It has been held that an arbitrator's failure to disclose certain facts which might reasonably lead to an impression of bias constitutes grounds for vacating the award. *Albion Public Schools v Albion Education Ass'n,* 130 Mich App 698, 701; 344 NW2d 55 (1983), lv den 419 Mich 944 (1984). However, the failure to disclose does not per se require that the award be vacated. The questions presented by the parties in this appeal require consideration of two important qualifications on the relief available to the complaining party.

The first qualification is that a party's failure to raise the disqualification issue in the arbitral proceeding may constitute a waiver. A waiver has been described as follows:

"Waiver is the intentional relinquishment of a known right. . . . The usual manner of waiving a right is by acts which indicate an intention to relinquish it, . . . or by so neglecting and failing to act as to induce a belief that it was the intention and purpose to waive." [*Maxey v Proctor,* 343 Mich 453, 457; 72 NW2d 198 (1955), quoting *Bailey v Jones,* 243 Mich 159, 162; 219 NW 629 (1928).]

Waiver in an arbitration case has been defined as consisting of knowledge, actual or constructive, in the complaining party of the tainted relationship or interest of the arbitrator. *International Brotherhood of Teamsters, Local Union 560 v Bergen-Hudson Roofing Supply Co,* 159 NJ Super 313; 387 A2d 1246 (1978).

The second qualification is that, to overturn the

arbitration award, the partiality or bias must be certain and direct, not remote, uncertain or speculative. *Belen v Allstate Ins Co,* 173 Mich App 641, 645; 434 NW2d 203 (1988); *Kauffman v Haas,* 113 Mich App 816, 819; 318 NW2d 572 (1982). Although the trial court based its decision not to vacate the award on the waiver issue, we conclude that a consideration of both qualifications supports the court's decision not to vacate the award.

The record submitted by the parties on the disqualification issue consisted of the record of the arbitration proceedings, affidavits, and documentary proofs. While there were some factual disputes established by this record, the trial court did not resolve the disputes but rather based its decision on undisputed facts. Those facts that were not disputed established that there is no basis for vacating the award due to "evident partiality."

Addressing first the waiver issue, the record indicates that Charles Scales did in fact file a lawsuit against the defendant in 1984 on behalf of his consulting firm. The lawsuit was commenced in September, 1984, in an effort to collect on a debt owed to the consulting firm by Olympian Sprinkler, Inc., for shop drawings prepared by the consulting firm. Olympian was then a subcontractor on a construction project at the University of Michigan. The general contractor was Spence Brothers, Inc., the defendant in this case. Although the consulting firm's contract was with Olympian, it named the defendant as a party on the theory that the defendant, as the general contractor, might owe Olympian for the shop drawings. The case was settled two months later when the project manager for the defendant, Thomas Spence, sent a joint check for $2,279 to Olympian and the consulting firm to settle the matter. As project manager, Thomas Spence was

responsible for all administrative matters relating to the project, including litigation.

By contrast, the project manager of the project underlying the instant arbitration action was the president of the defendant, Herbert Spence. The project entailed construction of a portion of the Ann Arbor Waste Water Treatment Plant. Defendant was the general contractor for the project and the plaintiff, Gordon Sel-Way, was a subcontractor responsible for excavation work.

Plaintiff originally filed an arbitration claim for about $900,000 in 1982 under a subcontract, but the proceedings were adjourned by mutual consent while settlement negotiations were pursued with the project owner. In November, 1985, Charles Scales was appointed as a member of the arbitration panel. Arbitration proceedings commenced in January, 1986, on an amended claim for $4,000,000 and terminated in November, 1986, when the panel reached a decision. Hugh Spence, the vice-president of the defendant and the project superintendent, appeared at the arbitration hearing on behalf of the defendant. According to Hugh Spence's affidavit, he shared responsibility for the management of the project, including litigation, with Herbert Spence.

There is some conflict in the evidence regarding whether Charles Scales made a disclosure of his participation in the 1984 lawsuit prior to the arbitration hearing. On the one hand, Charles Scales asserted in a December, 1986, memorandum to the AAA that he may not have disclosed some information regarding a previous relationship with the defendant and "had forgotten" that the defendant was named as a party in the prior lawsuit. On the other hand, Charles Scales averred in a January, 1987, affidavit that he made a disclosure of the lawsuit when the arbitration hearing com-

menced on January 7, 1986, although the transcript of the hearing and the affidavit of other participants do not support this assertion. We note that these factual disputes might never have occurred had the AAA not permitted the hearing to begin without first obtaining the required form from Charles Scales.

However, there was no dispute that at least two agents of the defendant had knowledge of the prior relationship between the defendant and Charles Scales in his status, as agent for the consulting firm. Thomas Spence acquired knowledge through his role as project manager of the University of Michigan project, while Herbert Spence acquired knowledge as president of the defendant in 1985 when he undertook to contact Charles Scales regarding a court notice of the lawsuit that was sent to the defendant in error. In a letter dated March 6, 1985, to the court, Herbert Spence explained:

> Enclosed is a copy of Notice of Court Appearance received by us for March 19, 1985.
>
> Since we had no knowledge of this case we contacted Mr. Charles R. Scales, Jr.
>
> We were informed by Mr. Scales that the Notice was sent to Spence Brothers in error and that we should disregard.
>
> Please confirm with Mr. Scales if necessary.

The trial court imputed the knowledge of Thomas and Herbert Spence to the defendant and thereafter concluded that the defendant's failure to act on the knowledge in the arbitral process by objecting to Charles Scales' alleged partiality constituted a waiver. We agree with the trial court.

A corporation is merely a legal fiction acting through its officers and agents. *Bruun v Cook,* 280

Mich 484; 273 NW 774 (1937). One of the burdens of acting under the corporate form is that the law will impute the knowledge of individual officers and employees at a certain level of responsibility to the corporation:

> The knowledge of individual officers and employees at a certain level of responsibility will be deemed the knowledge of the corporation; where the level of responsibility begins must be discerned from the circumstances of each case. Whether employees can be considered managerial employees so as to impute their actions to the corporation does not necessarily hinge on their level in the corporate hierarchy, but depends on the degree of discretion the employee has in making decisions that will ultimately determine corporate policy. [18B Am Jur 2d, Corporations, § 1673, pp 524-525.]

This Court has recognized that the combined knowledge of employees may be imputed to a corporation. *People v American Medical Centers of Michigan, Limited,* 118 Mich App 135, 155-156; 324 NW2d 782 (1982), lv den 417 Mich 985 (1983), cert den sub nom *Fuentes v Michigan,* 464 US 1009 (1983). We agree with this rule and adopt the standard for imputed collective knowledge set forth in *Copeman Laboratories Co v General Motors Corp,* 36 F Supp 755, 762 (ED Mich, 1941):

> When a person representing a corporation is doing a thing which is in connection with and pertinent to that part of the corporation business which he is employed, or authorized or selected to do, then that which is learned or done by that person pursuant thereto is in the knowledge of the corporation. The knowledge possessed by a corporation about a particular thing is the sum total of all the knowledge which its officers and agents, who are authorized and charged with the doing of

the particular thing acquire, while acting under
and within the scope of their authority.

Given the managerial responsibilities of Thomas
and Herbert Spence and the underlying facts es-
tablishing their knowledge of Charles Scales' in-
volvement in a prior lawsuit against the corpora-
tion, we conclude that the trial court properly
imputed their knowledge to the defendant and
that the defendant's failure to act on that knowl-
edge by objecting to Charles Scales' partiality
constitutes a waiver. The fact that the individual
agents of the defendant may not have personally
connected Scales' name to the prior lawsuit until
after the arbitration award was entered does not
mandate a different conclusion. Even where there
are changes in a corporation's personnel, i.e., a
new president is appointed, a corporation, once
charged with knowledge of a particular transac-
tion or event, continues to be affected by such
knowledge. See 18B Am Jur 2d, Corporations,
§ 1678, p 529; *Microbiological Research Corp v
Muna,* 625 P2d 690 (Utah, 1981).

It follows that a corporate agent will not be
allowed by the law to shut his or her eyes to the
knowledge imputed to the corporation, but is re-
quired to carry out his or her duties in light of
that knowledge even if the individual involved did
not have personal knowledge of the fact in dispute.
Here, Herbert Spence acquired knowledge of the
prior lawsuit in the course of his authority as
president of the corporation. The corporation did
not act on that knowledge, or the other knowledge
imputed to the corporation through Thomas
Spence, when Herbert Spence performed his man-
agerial responsibilities as project manager of the
water treatment project. Based on this record, we
conclude that the trial court correctly determined

that the defendant waived any objection to Charles Scales' alleged partiality. In some cases such an analysis may appear harsh, but doing business in the corporate form carries certain burdens of which this is one.

The harshness is mitigated in this case because we are also able to uphold the trial court's decision by reason of the peripheral nature of the alleged partiality. On the one hand, the defendant argues that the trial court transformed "isolated events" and minimal contact to actual knowledge of a prior conflict of interest. On the other hand, the defendant asserts that Charles Scales' participation in the lawsuit of his consulting firm against the defendant in an effort to collect on a debt owed by Olympian caused "hard feelings." The amount of the debt was minimal and was resolved by settlement two months after the lawsuit was filed. Defendant was added as a party in the prior action not because the Scales consulting firm had a dispute with it, but only because defendant might have owed money to the party who was indebted to the Scales consulting firm. Except for an error of the district court in keeping the case on its docket, the entire matter was resolved over one year prior to Charles Scales' appointment as an arbitrator. We conclude that the possibility of partiality or bias by Charles Scales as a result of this lawsuit is too remote and speculative to overturn the arbitration award. There is no "evident partiality" and, hence, no basis for vacating the award.

II

Next, the defendant asserts that the arbitration award of $1,572,442.12 is erroneous on its face for failure to list the awards made on each of plain-

tiff's multiple claims. Defendant asserts that an itemized award is necessary to determine whether the award is contrary to the contract provisions.

In *DAIIE v Gavin,* 416 Mich 407, 428-429; 331 NW2d 418 (1982), our Supreme Court observed that there is no requirement that a verbatim record of private arbitration proceedings be made or that the arbitrator specify findings of fact or conclusions of law:

> Thus, from the perspective of the record alone, a reviewing court's ability to review an award is restricted to cases in which an error of law appears from the face of the award, or the terms of the contract of submission, or such documentation as the parties agree will constitute the record.

The standard of judicial review from the private arbitration award, as adopted in *Gavin, supra,* p 443, quoting *Howe v Patrons' Mutual Fire Ins Co of Michigan,* 216 Mich 560, 570; 185 NW 864 (1921), is:

> "[W]here it clearly appears on the face of the award or the reasons for the decision as stated, being substantially a part of the award, that the arbitrators through an error in law have been led to a wrong conclusion, and that, but for such error, a substantially different award must have been made, the award and decision will be set aside."

See also, *Belen, supra,* pp 644-645; *The Hayman Co v Brady Mechanical, Inc,* 139 Mich App 185; 362 NW2d 243 (1984).

Here, there is no clear error on the face of the award. Since the arbitrators had no duty to make a separate award for each claim, their failure to do so was not error and, hence, is not grounds for

vacating the award. Therefore, we conclude that the trial court correctly upheld the award.

III

By way of cross-appeal, plaintiff contends that the trial court erred by vacating the arbitration award of $343,007.79 in pre-award interest and by limiting post-award interest to five percent per annum. We disagree.

With regard to the pre-award interest of $343,007.79, plaintiff contends that it is conceivable that the arbitrators intended to award interest as damages to compensate plaintiff for its lost use of funds and, hence, the award must stand. The trial court vacated the interest award because there was no contractual basis for interest.

Michigan has long recognized the general rule that interest may be awarded as an element of damages to compensate for the lost use of funds in an action based on contract or tort. *Banish v Hamtramck,* 9 Mich App 381; 157 NW2d 445 (1968), lv den 381 Mich 779 (1968); *Grand Trunk W R Co v H W Nelson Co,* 116 F2d 823 (CA 6, 1941), reh den 118 F2d 252 (1941); and see *Matich v Modern Research Corp,* 430 Mich 1, 7, n 2; 420 NW2d 67 (1988). The questions that arise generally concern the date from which interest may accrue, the lawful rate of interest, and the existence of any statutory authority for the interest. See *Vannoy v City of Warren,* 26 Mich App 283; 182 NW2d 65 (1970), aff'd 386 Mich 686 (1972) (holding that, in a wrongful death action, a jury awards interest as part of its general verdict where a claim accrues as of a date certain and, upon the verdict being entered, statutory interest is paid).

With regard to when interest accrues in an

action based on contract, there has been an in-
creased tendency to depart from standards based
upon whether the claim is liquidated or ascertain-
able. See Dobbs, Remedies (Hornbook Series, 1973),
p 174; *Ramada Development Co v U S Fidelity &
Guaranty Co,* 626 F2d 517 (CA 6, 1980). While
Michigan case law developed by making distinc-
tions between liquidated and unliquidated dam-
ages, the focus is on whether the award of interest
is necessary to allow full compensation:

> The concept that interest should be allowed as
> part of the damages for a delay in paying the
> principal damages was not readily accepted. As
> the law developed exceptions were made, and in
> particular cases the jury, or the trial judge as a
> matter of discretion, was permitted to allow inter-
> est as part of the damages. As case law defined
> those areas in which interest would be assessed as
> part of the damages, restrictions were placed on
> the unfettered exercise of jury and trial judge
> discretion.
>
> It came to be a familiar principle that generally
> interest will be included as a matter of right
> where the amount claimed is "liquidated," but not
> where the claim is "unliquidated." Definitions of
> "liquidated" were not always consistent, and close
> cases created much confusion, until even the liqui-
> dated-unliquidated standard approached coales-
> cence. In *Cree Coach Company v Wolverine Insur-
> ance Company* (1962), 366 Mich 449 [115 NW2d
> 400] interest was allowed from the date of loss on
> an unliquidated amount which, said the Court,
> "was known or could have been easily ascer-
> tained" (p 463). McCormick contends that interest
> should be includible except where the damages are
> "at large" and thus, in the last analysis, depend
> upon the discretion of the trier of fact uncon-
> trolled by any meaningful standard except overall
> reasonableness. McCormick on Damages, § 57,
> page 226.
>
> The cases are in conflict. Interest has been de-

nied on the ground that the claim was unliqui-
dated. Nevertheless, interest has been allowed on
unliquidated claims.

*  *  *

We are persuaded the Michigan cases that allow
interest as part of the damage in order to accom-
plish full compensation focus on the objectively
sound facet of the matter. Although that principle
seems clear, the difficult question of what is full
compensation, neither excessive nor inadequate, is
still very much with us. [*Banish, supra,* pp 395-
396, 399.]

With regard to interest on contracts, our Supreme
Court stated in *Amluxen v Eugene J Stephenson,
Inc,* 340 Mich 273, 275-276; 65 NW2d 807 (1954),
quoting *Mitchell v Reolds Farms Co,* 268 Mich 301,
311; 256 NW 445 (1934):

"The question of interest is purely statutory.
*Kermott v Ayer,* 11 Mich 181 [1863]; *Tousey v
Moore,* 79 Mich 564 [44 NW 958 (1890)]. Though
interest is generally a matter of contract, the
written contracts here involved do not provide for
interest. 'It is a question of damages not of positive
agreement.' *O'Connor v Beckwith,* 41 Mich 657 [3
NW 166 (1879)]. 'No implied contract can grow up
under which interest can be recovered.' *Regents of
the University of Michigan v Rose,* 45 Mich 284,
300 [7 NW 875 (1881)]. 'After default interest is
strictly allowable only as damages.' *Mason v Cal-
lender,* 2 Minn 350 (72 Am Dec 102). *Hubbard v
Callahan,* 42 Conn 524 (19 Am Rep 564), for lost
use. *Boyce v Boyce,* 124 Mich 696 [83 NW 1013
(1900)]. 'Failure to pay money promised when by
law it ought to be paid, authorizes the allowance
of interest in the nature of damages for the im-
proper detention of the sum so promised.' *Mc-
Creery v Green,* 38 Mich 172, 185 [1878]. 'Interest
is allowed where money is withheld, either upon
the ground of a promise, express or implied, to pay

interest or as damages for default in retaining money due and owing another. But upon whatever ground it may be placed, in the absence of an express promise, until the principal becomes due, no promise to pay interest can be implied, or be awarded as damages.' *Lake Shore & Michigan Southern R Co v People,* 46 Mich 193, 211; [9 NW 249 (1881)]."

Here, it is conceivable, as argued by plaintiff, that the arbitrators intended to award interest as an element of damages in order to fully compensate plaintiff. However, it has been said that pre-award interest is not permitted in an award resulting from arbitration on the theory that the defendant is not contractually obligated to pay the damage until the award is entered. See *Osinski v DAIIE,* 69 Mich App 426; 245 NW2d 426 (1976). Although the *Osinski* Court reached its finding regarding the accrual date of the contractual obligation rather summarily, we agree with its rationale.

Under the terms of the contract at issue here, the parties agreed to submit all claims and disputes to arbitration. The contract contained no provision for interest or payment while a dispute was pending in arbitration. Until such time that the arbitrators resolved the dispute and made an award, the defendant simply had no contractual duty to pay plaintiff. Since the principal damages were not due until the arbitration award was entered, it follows that there was no basis for making an award of interest as damages, even if it was intended to accomplish full compensation. *Amluxen, supra.* Hence, having considered the remedy agreed to by the parties to resolve any dispute, we conclude that the arbitrators erred as a matter of law in awarding pre-award interest to plaintiff. The error is plain from the face of the

award and, therefore, the trial court's decision to vacate the interest award is affirmed.

Finally, with regard to plaintiff's challenge to post-award interest of five percent per annum commencing on the date of the arbitration award, we find no error. The interest was authorized by MCL 438.7; MSA 19.4, which, in an action based on contract, provides that it "shall be lawful . . . to allow and receive interest" upon an award of money ascertained or liquidated by award of arbitrators. The interest under the statute begins to accrue on the date of the award, and the legal rate of interest under the usury statute, MCL 438.31; MSA 19.15(1), is five percent per annum. *Osinski, supra,* pp 428-429.

We reject plaintiff's assertion that the judgment interest statute, MCL 600.6013; MSA 27A.6013, applied to the arbitration award. This statute provides in pertinent part that "[i]nterest shall be allowed on a money judgment recovered in a civil action." In *Morgan v Kamil,* 144 Mich App 171, 173-174; 375 NW2d 378 (1985), lv den 422 Mich 970 (1985), this Court held:

> MCL 600.6013; MSA 27A.6013 allows interest only on money judgments recovered in civil actions; it does not authorize interest on an arbitration award and the judgments entered confirming the award. The Legislature intended MCL 600.6013; MSA 27A.6013 to apply only to judgments obtained in civil actions, through court proceedings, not arbitration.

Accord, *Osinski, supra; Moultrie v DAIIE,* 123 Mich App 403; 333 NW2d 298 (1983); *Western Casualty & Surety Co v Garden City,* 151 Mich App 83, 89; 390 NW2d 687 (1986). We agree with these decisions and, therefore, affirm the trial

court's decision to limit the interest award to five percent per annum beginning on the date of the arbitration award and continuing until payment.

Affirmed.