*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VISTA PROPERTY GROUP, LLC,

        Plaintiff-Appellant,

v

DEBRA SCHULTE, JUDY HAHN, JEREMY
KRESS, and TRISHA SCHEFFLER,

        Defendants/Cross-Plaintiffs/Cross-
        Defendants,

and

LARRY BARRY, WILLIAM DICKINSON,
MAXINE DUKES, ROBIN HUTTENGA, and
MARIANN ZOCK,

        Defendants/Cross-Defendants,

and

NORTHWOOD HILLS CONDOMINIUM
ASSOCIATION,

        Defendant/Cross-Plaintiff-Appellee,

and

JOHN DOE and JANE DOE,

        Defendants,

and

CRAIG A. BLACK, LANDMARK REALTY
ADVISORS, INC., and LORI SEITLER,

        Defendants-Appellees.

UNPUBLISHED
September 17, 2020

No. 347471
Kent Circuit Court
LC No. 16-011201-CB

Before: REDFORD, P.J., and BECKERING and M. J. KELLY, JJ.

PER CURIAM.

The present case involves a contract for property management services between plaintiff Vista Property Group, LLC, and defendant Northwood Hills Condominium Association. Northwood Hills board members—defendants Debra Schulte, Judy Hahn, Jeremy Kress, and Trisha Scheffler—made the decision to contract with Vista for its property management services, and Schulte—the board president—signed the agreement. The board also terminated the former property management company: defendant Landmark Realty Advisors, Inc. Soon after, there was an emergency recall of these board members and the election of new board members—defendants Larry Barry, William Dickinson, Maxine Dukes, Robin Huttenga, and Mariann Zock. This new board repudiated the Vista contract and retained Landmark to continue as property manager.

Relevant to the issues on appeal, Vista filed tortious interference and conspiracy claims against Landmark, its owner Craig Black, and its employee Lori Seitler. The trial court dismissed the claims against the Landmark defendants before trial under MCR 2.116(C)(10). Vista also alleged breach of contract by Northwood Hills. Northwoods Hills defended against the breach-of-contract allegations by claiming that Vista first breached the contract by failing to provide a copy of the contract to Northwood Hills. The breach-of-contract claim proceeded to a jury trial, and the jury returned a verdict of no cause of action, concluding that Vista first breached the agreement. The trial court entered a judgment of no cause of action. Vista now appeals as of right.

For the reasons explained in this opinion, we affirm the grant of summary disposition to the Landmark defendants. However, because Northwood Hills's first-breach defense fails as a matter of law and Northwood Hills instead anticipatorily breached the contract, we vacate the judgment of no cause of action in favor of Northwood Hills, and we remand for entry of judgment in Vista's favor and a determination of Vista's damages.[1]

I. BREACH OF CONTRACT

A. STANDARD OF REVIEW

Vista argues that the trial court erred by denying its motions for a directed verdict and judgment notwithstanding the verdict (JNOV) because Northwood Hills's first-breach defense failed as a matter of law given that (1) nothing in the contract required Vista to provide a copy of the agreement to anyone and (2) even assuming such an obligation, Vista fulfilled this obligation by providing the contract to Schulte when she signed it. "We review de novo a trial court's denial

_____

[1] In a motion to strike filed in this Court, Northwood Hills asserts that exhibit 3 to Vista's brief on appeal contains non-record evidence. Although we denied the motion to strike, *Vista Property Group LLC v Schulte*, unpublished order of the Court of Appeals, entered August 25, 2020 (Docket No. 347471), we have nevertheless not considered exhibit 3 as it contains non-record evidence. See MCR 7.210(A)(1) ("Appeals to the Court of Appeals are heard on the original record.").

of a motion for a directed verdict or its denial of a motion for judgment notwithstanding the verdict." *Abke v Vandenberg*, 239 Mich App 359, 361; 608 NW2d 73 (2000). When considering either motion, this Court views "the evidence, as well as any legitimate inferences, in the light most favorable to the nonmoving party and decide whether a factual question exists about which reasonable minds might have differed." *Id.*

"The proper interpretation of a contract and the legal effect of a contractual clause are questions of law that we review de novo." *Sherman-Nadiv v Farm Bureau Gen Ins Co of Mich*, 282 Mich App 75, 78; 761 NW2d 872 (2008). "Whether a contract is ambiguous is a question of law, while determining the meaning of ambiguous contract language becomes a question of fact." *Bodnar v St John Providence, Inc*, 327 Mich App 203, 220; 933 NW2d 363 (2019).

> This Court's main goal in the interpretation of contracts is to honor the intent of the parties. The words used in the contract are the best evidence [of] the parties' intent. When contract language is clear, unambiguous, and has a definite meaning, courts do not have the ability to write a different contract for the parties, or to consider extrinsic testimony to determine the parties' intent. [*Auto-Owners Ins Co v Campbell-Durocher Group Painting & Gen Contracting, LLC*, 322 Mich App 218, 225; 911 NW2d 493 (2017) (quotation marks and citation omitted; alteration in original).]

"A provision in a contract is ambiguous if it irreconcilably conflicts with another provision, or when it is equally susceptible to more than a single meaning." *Royal Prop Group, LLC v Prime Ins Syndicate, Inc*, 267 Mich App 708, 715; 706 NW2d 426 (2005).

## B. ANALYSIS

"A party claiming a breach of contract must establish (1) that there was a contract, (2) that the other party breached the contract and, (3) that the party asserting breach of contract suffered damages as a result of the breach." *Dunn v Bennett*, 303 Mich App 767, 774; 846 NW2d 75 (2013) (quotation marks and citation omitted). However, a contracting party "who first breaches a contract cannot maintain an action against the other contracting party for his subsequent breach or failure to perform." *Able Demolition v Pontiac*, 275 Mich App 577, 585; 739 NW2d 696 (2007) (quotation marks and citation omitted). This first-breach rule only applies if the initial breach was "substantial." *Id.* Not every "partial failure to comply" or "technical" breach justifies repudiation or rescission of the contract. *Rosenthal v Triangle Dev Co*, 261 Mich 462, 463; 246 NW 182 (1933).

What constitutes a substantial breach "must be given close scrutiny." *McCarty v Mercury Metalcraft Co*, 372 Mich 567, 574; 127 NW2d 340 (1964).

> Such scrutiny discloses that the application of such a rule can be found only in cases where the breach has effected such a change in essential operative elements of the contract that further performance by the other party is thereby rendered ineffective or impossible, such as the causing of a complete failure of consideration or the prevention of further performance by the other party. [*Id.* (citations omitted).]

"One consideration in determining whether a breach is material is whether the nonbreaching party obtained the benefit which he or she reasonably expected to receive." *Holtzlander v Brownell*, 182 Mich App 716, 722; 453 NW2d 295 (1990). As more fully detailed by the Michigan Supreme Court, relevant considerations include:

>     (a) The extent to which the injured party will obtain the substantial benefit which he could have reasonably anticipated;

>     (b) The extent to which the injured party may be adequately compensated in damages for lack of complete performance;

>     (c) The extent to which the party failing to perform has already partly performed or made preparations for performance;

>     (d) The greater or less hardship on the party failing to perform in terminating the contract;

>     (e) The wilful, negligent or innocent behavior of the party failing to perform;

>     (f) The greater or less uncertainty that the party failing to perform will perform the remainder of the contract. [*Walker & Co v Harrison*, 347 Mich 630, 635; 81 NW2d 352 (1957) (quotation marks and citation omitted).]

Ultimately, "the injured party's determination that there has been a material breach, justifying his own repudiation, is fraught with peril, for should such determination, as viewed by a later court in the calm of its contemplation, be unwarranted, the repudiator himself will have been guilty of material breach and himself have become the aggressor, not an innocent victim." *Id*.

In this case, Northwood Hills asserted that Vista substantially breached the contract by failing to provide a second copy of the contract to the association. On appeal, Northwood Hills continues to assert that Vista substantially breached the agreement by breaching implied covenants of good faith and fair dealing. Northwood Hills accuses Vista of sowing "seeds of doubt, mistrust, and betrayal" and failing to foster a "trusted partnership." However, the trial court *rejected* this good faith and fair dealing argument, declining to instruct the jury on such a theory and to a certain extent preventing Vista from offering evidence relating to the issues of good faith and fair dealing. In addition, Northwood Hills's nebulous arguments relating to good faith and fair dealing also lack merit on appeal. Michigan does not recognize the implied covenants of good faith and fair dealing as independent contractual duties that would support a claim that Vista breached the contract. See *Gorman v American Honda Motor Co, Inc*, 302 Mich App 113, 133-135; 839 NW2d 223 (2013); *Fodale v Waste Mgt of Mich, Inc*, 271 Mich App 11, 35; 718 NW2d 827 (2006); *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 476; 666 NW2d 271 (2003); *Barber v SMH (US), Inc*, 202 Mich App 366, 372; 509 NW2d 791 (1993). There is no merit to Northwoods Hills's claim that it could repudiate the contract because it deemed Vista untrustworthy or uncooperative.

Instead, the germane questions are whether Vista breached an actual provision in the contract and whether such a breach can be considered substantial. Undisputedly, the contract contains no provision expressly requiring Vista to provide a copy of the contract to anyone. In

nevertheless submitting the first-breach issue to the jury, the trial court concluded that the contract terms were ambiguous and could reasonably be read to impose a duty to provide a copy of the contract.

Under the contract, the agreement for Vista's management services had a term of January 1, 2017 to December 31, 2019. In other words, Vista did not become the manager of the property until January 1, 2017. Under § 24 of the agreement, during the transition period—i.e., the period between when Landmark received notice of its termination and the start date of the Vista contract—Vista agreed to provide "oversight services." The contract described Vista's obligations during the transition period as follows:

a) In the case the current management does not provide adequate representation but still remains in their position, the new Manager will help the Association take on any of the roles described in this contract to effectively continue the operations of the Association at no additional cost to the Association.

b) If the current management forfeits their rights to manage the property for the remaining period of the contract, then the new Manager will take immediate responsibility, and fulfil the terms and conditions described above. At this time then the start date will be effective immediately, including all compensation. To clarify, at no time will the Association be paying for two management services.

c) The new Manager will also, alongside of the Association, properly notify the current management concerning the Association['s] decision to change management services. The new Manager will work on obtaining all documentation, files, and any other items to ensure that the transition between management complies will go as flawless as possible.

These provisions are not ambiguous. See *Royal Prop Group, LLC*, 267 Mich App at 715. There is nothing in the language used that can be read as requiring Vista to provide a copy of the contract to anyone. Section 24(c), for example, requires Vista to work on *obtaining* documents for a flawless transition, not to *provide* documents to anyone. Section 24(b) only applies if Landmark forfeited its rights to act as manager, which it did not. And § 24(a) only applies if Landmark "does not provide adequate representation." Northwood Hills never contended or presented evidence to establish that Landmark's representation during the transition period was inadequate so as to trigger § 24(a). Moreover, Northwood Hills's renewal of Landmark's contract shows that it felt Landmark's representation was adequate.

In sum, the contract language provides that during the transition period, Vista had very limited obligations under the contract, and nothing in its duties during the transition period required Vista to provide the contract to anyone. In arguing to the contrary, Northwood Hills essentially maintains that it was "reasonable" to expect Vista to provide a copy of the contract during this time. However, whether reasonable or not, Northwood Hills cannot unilaterally add to Vista's contractual duties during the transitional period because Vista's duties during this time were defined by the contract. See *Wilkie v Auto-Owners Ins Co*, 469 Mich 41, 63; 664 NW2d 776 (2003) ("[T]he expectation that a contract will be enforceable other than according to its terms surely may not be said to be reasonable.") (quotation marks and citation omitted). Absent a duty

in the contract requiring Vista to provide a copy of the agreement during the transition period, Vista could not have substantially breached the agreement by failing to do so. Northwood Hills's first-breach defense fails as a matter of law.

Rather than considering Vista's obligations during the transitional period, the trial court looked to Vista's management duties under § 2. However, when the contract is considered as a whole—that is, when § 2, § 12, and § 24 are read in harmony—it is clear that the obligations under § 2 did not apply (1) unless Landmark forfeited its rights or provided inadequate representation during the transition period or (2) until Vista became the manager in January 2017. See *Hastings Mut Ins Co v Safety King, Inc*, 286 Mich App 287, 297; 778 NW2d 275 (2009) (recognizing that contract terms are not ambiguous when they admit of but one interpretation when the terms are considered in context according to their ordinary meaning). Consequently, even if § 2 is considered ambiguous, or broad enough to include an obligation to provide a copy of the contract, the obligations under § 2 were not in effect during the transition period. Instead, the undisputed facts demonstrate that Northwood Hills anticipatorily breached the agreement by renewing Landmark's contract and repudiating Vista's contract on December 4, 2016, *before* the time for Vista's performance under § 2 had arisen. See *Stoddard v Manufacturers Nat'l Bank of Grand Rapids*, 234 Mich App 140, 163; 593 NW2d 630 (1999) ("Under the doctrine of repudiation or anticipatory breach, if, before the time of performance, a party to a contract unequivocally declares the intent not to perform, the innocent party has the option to either sue immediately for the breach of contract or wait until the time of performance."). Given the unambiguous terms of the contract, there was no question of fact for the jury because Vista could not have first breached the contract by failing to provide the agreement when Vista had no contractual obligation to do so during the transitional period. Absent such a duty, the trial court erred by submitting the first-breach issue to the jury and by denying Vista's motions for a directed verdict and JNOV.

Additionally, Northwood Hills's first-breach argument fails as a matter of law because, even assuming Vista had an obligation to provide the contract to Northwood Hills, the undisputed facts demonstrate that Vista did in fact provide the contract to Northwood Hills. That is, Schulte undisputedly received a copy of the agreement from Vista when she signed it in October 2016. She admitted this fact at the annual meeting in November 2016, and she admitted this fact at trial. At the time she signed the contract and received a copy of it, Schulte was the president of the Northwood Hills Condominium Association. Ignoring the legal realities of the corporate form, Northwood Hills nevertheless maintains that, in providing the contract to Schulte, Vista somehow failed to provide the agreement to Northwood Hills. However, Northwood Hills Association is organized as a nonprofit corporation under the Nonprofit Corporation Act, MCL 450.2101 *et seq*.

> A corporation can only act through its employees and, consequently, the acts of its employees, within the scope of their employment, constitute the acts of the corporation. Likewise, knowledge acquired by employees within the scope of their employment is imputed to the corporation. In consequence, a corporation cannot plead innocence by asserting that the information obtained by several employees was not acquired by any one individual employee who then would have comprehended its full import. Rather, the corporation is considered to have acquired the collective knowledge of its employees and is held responsible for their failure to act accordingly. [*Upjohn Co v New Hampshire Ins Co*, 438 Mich 197, 213-214; 476 NW2d 392 (1991) (quotation marks and citation omitted).]

-6-

Like employees, knowledge held by the board of directors may be imputed to the corporation. 18B Am Jur 2d Corporations § 1417. And "[e]ven where there are changes in a corporation's personnel, i.e., a new president is appointed, a corporation, once charged with knowledge of a particular transaction or event, continues to be affected by such knowledge." *Gordon Sel-Way, Inc v Spence Bros, Inc*, 177 Mich App 116, 125; 440 NW2d 907 (1989), aff'd in part, rev'd in part on other grounds 438 Mich 488 (1991). See also 19 CJS, Corporations, § 715 ("Once an agent's knowledge is imputed to a corporation, the imputed knowledge is not affected by changes in the corporation's personnel."). Further, a contract entered into by the corporation is a contract of the legal entity, not any individual member. 1 Fletcher Cyclopedia, Corporations § 29. "A corporation is a legal person and is bound by its contracts regardless of internal disagreements or, for that matter, internal agreements." *OD Silverstein, MD, PC v Servs, Inc*, 165 Mich App 355, 359; 418 NW2d 461 (1987).

In this case, Schulte, acting as the board president, entered into a binding contract with Vista on behalf of Northwood Hills. She received the contract when she signed it. Schulte's act of receiving the agreement constitutes the act of Northwood Hills. See *Upjohn Co*, 438 Mich at 213-214. And Schulte's knowledge of the contract and its terms is imputed to Northwood Hills, regardless of the fact that she no longer serves as president of the association. See *Gordon Sel-Way, Inc*, 177 Mich App at 125. Accordingly, as a matter of law, Northwood Hills received the contract and is imputed to have knowledge of the contract and its terms, and for these reasons, Northwood Hills cannot now claim that Vista breached a duty by failing to provide a copy of the agreement to Northwood Hills.[2]

In sum, because Northwood Hills's first-breach argument lacks merit as a matter of law, the trial court erred by denying Vista's motion for a directed verdict and its motion for JNOV. Absent this first-breach defense, we remand the case for entry of judgment in favor of Vista because there is no dispute that there was a binding agreement that was breached by Northwood Hills.[3] On remand, because the amount of damages under the contract is disputed, the issue of Vista's damages should be submitted to a trier of fact notwithstanding the fact that Northwood Hills's liability is clear. See *Bias v Ausbury*, 369 Mich 378, 383; 120 NW2d 233 (1963).

## II. TORTIOUS INTERFERENCE AND CONSPIRACY

### A. STANDARD OF REVIEW

---

[2] We note that subsequent internal strife—and the ouster of the old board—does not change these facts or justify Northwood Hills's repudiation of its contract with Vista. See *Redinger v Standard Oil Co*, 6 Mich App 74, 80; 148 NW2d 225 (1967) (noting that "this case would never have arisen were it not for a difference that developed subsequently in the corporate hierarchy of authority," but recognizing that "corporations are legal persons, and, as individuals in the eyes of the law, they are bound by their contracts in spite of internal disagreements affecting policy.").

[3] Given our resolution, we need not consider Vista's argument that the trial court erred by instructing the jury on first breach and denying Vista's request for an instruction on anticipatory breach.

Vista argues that the trial court also erred by granting summary disposition to Landmark, Seitler, and Black (the Landmark defendants) under MCR 2.116(C)(10) on Vista's claims for tortious interference with a contract and civil conspiracy. We review de novo a trial court's decision to grant summary disposition. *Hanlin v Saugatuck Twp*, 299 Mich App 233, 239; 829 NW2d 335 (2013).

> Summary disposition is proper under MCR 2.116(C)(10) if there is no genuine issue as to any material fact, and the moving party is entitled to judgment . . . as a matter of law. A motion under MCR 2.116(C)(10) tests the factual support of a complaint. A court must consider the pleadings, affidavits, depositions, admissions, and other documentary evidence in the light most favorable to the nonmoving party. A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ. [*Id.* (citations and quotation marks omitted).]

"The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition under MCR 2.116(C)(10)." *Pioneer State Mut Ins Co v Dells*, 301 Mich App 368, 377; 836 NW2d 257 (2013).

## B. ANALYSIS

"The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract,[4] and (3) an unjustified instigation of the breach by the defendant." *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 89-90; 706 NW2d 843 (2005). Further, to maintain an action for tortious interference, the plaintiff must establish that the defendant was a "third party" to the contract. *Reed v Mich Metro Girl Scout Council*, 201 Mich App 10, 13; 506 NW2d 231 (1993). Corporate agents may be liable for tortious interference with the corporation's contracts only when "they acted solely for their own benefit with no benefit to the corporation." *Id.*

"By definition, tortious interference with a contract is an intentional tort." *Knight Enterprises v RPF Oil Co*, 299 Mich App 275, 280; 829 NW2d 345 (2013). "One who alleges tortious interference with a contractual . . . relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights . . . of another." *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 382; 689 NW2d 145 (2004). "A wrongful act per se is an act that is inherently wrongful

---

[4] On appeal, the Landmark defendants assert that Vista's arguments related to tortious interference and conspiracy are moot because the jury determined that Northwood Hills did not breach the contract. However, as discussed, the trial court erred by denying Vista's motions for a directed verdict and JNOV because Northwood Hills's first-breach argument fails as a matter of law, and absent this first-breach defense, Vista is entitled to judgment on its breach-of-contract claim. It follows, relative to the Landmark defendants' mootness argument, that the jury's verdict does not preclude a finding that Northwood Hills breached the agreement.

or an act that can never be justified under any circumstances. If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Knight Enterprises*, 299 Mich App at 280 (quotation marks and citation omitted).

Primarily at issue in this case is the third element of tortious interference—whether the Landmark defendants engaged in an "unjustified instigation" of the breach of contract. This element requires a showing of causation; that is, there must be "purposeful causation whether by inducement or otherwise." 1 Restatement Torts, § 766, comment *d*. See also *Health Call of Detroit*, 268 Mich App at 101 (considering whether conduct was a "but for" cause of breach).

> The essential thing is the purpose to cause the result. If the actor does not have this purpose, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other. It is not necessary, however, that the purpose to cause the breach of contract or failure to deal be the actor's sole or paramount purpose. It is sufficient that he designs this result whether because he desires it as an end in itself or because he regards it as a necessary, even if regrettable, means to some other end. [*Knight Enterprises*, 299 Mich App at 281 (quotation marks and citation omitted).]

In this case, the trial court did not err by granting summary disposition to the Landmark defendants because there was no evidence that Seitler, Black, or Landmark induced or otherwise instigated Northwood Hills's breach of contract. There is evidence that Seitler and Black provided assistance with the recall efforts, such as making or allowing Dukes to make copies, providing Dukes with names of potential new board members, confirming names of co-owners, asking residents to collect signatures, and providing Dukes with the name of the lawyer who drafted the recall petition. Such conduct does not, however, appear to be the type of wrongful or unjustified conduct that would support a tortious interference claim. See *Derderian*, 263 Mich App at 382.

Moreover, there is no evidence that this conduct by Seitler and Black caused the breach of Vista's contract. There is no evidence that Seitler and Black initiated the recall, that the recall was initiated to cause a breach of Vista's contract, or that, ultimately, Seitler and Black had any role or influence whatsoever in the new board's decision to terminate Vista. Rather, all the evidence indicates that Dukes initiated the recall petition, that Dukes sought out Black and Seitler's assistance in the recall effort, that the recall was motivated by the co-owners' dissatisfaction with the "secretive" decision-making by the old board rather than any concerns about Vista, and that, once in power, the new board made the independent decision—without any inducement or other influence from Landmark—to terminate Vista because they did not receive a copy of the Vista contract. Landmark certainly benefited from the new board's anticipatory repudiation of Vista's contract, but this fact alone does not establish that the Landmark defendants engaged in an unjustified instigation that caused the breach of contract. See *McAlpine v AAMCO Automatic Transmissions, Inc*, 461 F Supp 1232, 1269 (ED Mich, 1978) ("It is not enough that they merely have reaped the advantages of the broken contract after the contracting party has withdrawn from it of his own motion.").

Aside from assistance provided by Seitler and Black in connection with the recall, Vista notes the deposition testimony of its owner, Russell Richter, to the effect that he overheard Seitler say something at the annual meeting about Vista raising fees and getting rid of the on-site manager. One of the co-owners at Northwood Hills—Elaine Racy—also testified at her deposition that Seitler told her that Vista had been hired because the owners were Schulte's friends. However, even if Seitler made these statements, there is no evidence that these statements caused Northwood Hills to breach the Vista contract. Again, all evidence about the reasons for the breach indicated that the new board decided to repudiate the Vista contract because they did not receive a copy of the agreement. Thus, even viewed in a light most favorable to Vista, the evidence fails to show a material question of fact regarding causation.

Vista contends that Dukes—and other members of the new board as well as the Landmark defendants—may not be credible witnesses with regard to the events surrounding the recall and the reasons for termination of the Vista contract. However, when responding to a motion for summary disposition, Vista cannot rely on mere allegations and denials but must set forth specific facts showing that a genuine issue of material fact exists. See *Quinto v Cross & Peters Co*, 451 Mich 358, 362-363; 547 NW2d 314 (1996). Vista denies the stated reasons for the recall and termination of Vista's contract, but has offered no contradictory evidence—nor can reasonable inferences be drawn from the evidence—to support Vista's theory that the Landmark defendants unjustifiably instigated the breach of Vista's contract. And, although a cause of action may be established with circumstantial evidence, Vista's speculation and conjecture about the true reasons for the recall is insufficient to survive a motion for summary disposition. See *Karbel v Comerica Bank*, 247 Mich App 90, 97; 635 NW2d 69 (2001). The trial court did not err by granting summary disposition to the Landmark defendants on Vista's tortious interference claim under MCR 2.116(C)(10).

Aside from its tortious interference claim, Vista also alleged (1) conspiracy to commit tortious interference and (2) conspiracy to breach a contract. Given that Vista's tortious interference claim lacks merit, it follows that Vista's claim for conspiracy to commit tortious interference fails. "[A] claim for civil conspiracy may not exist in the air; rather, it is necessary to prove a separate, actionable tort." *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003) (quotation marks and citation omitted), aff'd 472 Mich 91 (2005). Therefore, because the trial court properly granted summary disposition on the tortious interference with a contract claim, summary disposition was also properly granted to the Landmark defendants on the related civil conspiracy claim. See *id*. at 384-385.

We affirm the grant of summary disposition to the Landmark defendants. However, we vacate the judgment of no cause of action on Vista's breach-of-contract claim against Northwood Hills, and we remand for entry of judgment in favor of Vista as well as a determination of Vista's damages. We do not retain jurisdiction. No taxable costs are awarded. MCR 7.219(A).

/s/ James Robert Redford
/s/ Jane M. Beckering
/s/ Michael J. Kelly

-10-