KNIGHT ENTERPRISES, INC v RPF OIL COMPANY

Docket No. 306451. Submitted December 5, 2012, at Detroit. Decided January 17, 2013, at 9:05 a.m. Leave to appeal denied, 494 Mich 857.

Knight Enterprises, Inc. filed an action in the Wayne Circuit Court against RPF Oil Company and others, claiming that RPF tortiously interfered with plaintiff's fuel-supply contract with Amer Saleh. Saleh had purchased two gasoline stations from RPF in 2005 or 2006 and informed RPF that he had existing fuel-supply contracts in effect with another supplier for an additional two years. Saleh approached RPF and other companies in 2008, indicating that his contract with plaintiff had expired and that he was seeking new fuel-supply contracts. Saleh was dissatisfied with plaintiff because it had continuously underpriced Saleh at a nearby gas station, and overcharged Saleh for fuel delivery. In addition, Saleh was worried that his Citgo gas station business would be adversely affected by negative public sentiment towards Venezuela, the source of Citgo's fuel. Saleh filed an action in April 2008 against plaintiff, claiming breach of contract and seeking termination of the fuel-supply contract. Saleh subsequently signed a ten-year fuel-supply agreement with RPF, effective July 1, 2008, but operated his stations under the Citgo name until RPF converted them to Shell stations. Plaintiff presented testimony at trial that its fuel-supply contract with Saleh had not expired until at least 2010. RPF presented testimony that it had no knowledge of a continuing contract between Saleh and plaintiff, that Saleh had been informed that a station could not be rebranded if there were existing contracts in place, and that Saleh had specifically asserted that his Citgo contracts were no longer in effect. Following a bench trial, the court, Prentis Edwards, J., ruled in favor of plaintiff and awarded damages. RPF appealed.

The Court of Appeals *held*:

Tortious interference with a contract or contractual relation is distinct from the cause of action for tortious interference with a business relationship or expectancy. The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant. The defendant must have unjustifiably

instigated or induced the party to breach its contract with the plaintiff to prevail on a claim for tortious interference with a contract. The trial court erred by entering judgment in favor of plaintiff. The trial court erroneously decided the case on the basis of the elements for tortious interference with a business relationship, which is distinct from the instant action which involved tortious interference with a contract. The evidence established that RPF did not instigate Saleh's breach of his agreement with plaintiff or intentionally induce Saleh to breach his contracts. Further, undisputed evidence established that Saleh had sued plaintiff in a prior action to avoid his contractual obligations before he even entered into a contract with RPF.

Affirmed.

CONTRACTS — FUEL-SUPPLY CONTRACTS — BREACH OF CONTRACTS — TORTIOUS INTERFERENCE WITH CONTRACTS.

Tortious interference with a contract or contractual relations is distinct from the cause of action for tortious interference with a business relationship or expectancy; the elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant; the defendant must have unjustifiably instigated or induced the party to breach its contract with the plaintiff to prevail on a claim for tortious interference with a contract.

*Giarmarco, Mullins & Horton, P.C.* (by *Ben M. Gonek* and *Andrew T. Baran*), for Knight Enterprises, Inc.

*Zausmer, Kaufman, August, Caldwell & Tayler, P. C.* (by *Michael L. Caldwell*), for RPF Oil Company.

Before: SAAD, P.J., and K. F. KELLY and M. J. KELLY, JJ.

SAAD, P.J. Defendant, RPF Oil Company, appeals the trial court's judgment in favor of plaintiff, Knight Enterprises, Inc. For the reasons set forth below, we reverse.

### I. FACTS AND PROCEEDINGS

Knight filed a complaint against RPF and other defendants after Amer Saleh decided to rebrand his gas

stations from Citgo, for which Knight is the gasoline supplier, to Shell, for which RPF is the gasoline supplier. Knight specifically alleged that RPF intentionally interfered with the fuel supply agreements between Knight and Saleh, which caused Saleh and his companies "to breach their obligations to Knight Enterprises."

At trial RPF's executive chairman, John Fleckenstein, testified that in 2005 or 2006, Saleh bought two gas stations from RPF. At the time, Saleh told Fleckenstein that he had two other gas stations, one in Port Huron and one in Roseville, and that each had approximately two years left on their respective gasoline-supply contracts. In 2008, Saleh approached RPF and several other gasoline suppliers to enter into agreements to supply gasoline to his Port Huron and Roseville gas stations. According to Fleckenstein, Saleh told RPF that he was no longer under any contract with Knight. RPF employee Michelle Wright testified that when RPF entered into the supply agreements with Saleh, she asked Saleh directly whether he was under contract with any other gasoline supplier and he told her that he was not. Saleh confirmed this information at trial. Saleh testified that he was dissatisfied with Knight because Knight had continuously underpriced Saleh at a nearby gas station and had overcharged Saleh for fuel delivery. Saleh was also concerned that anti-American statements made by Venezuela's president, Hugo Chavez, had hurt his Citgo business because Venezuela supplied Citgo fuel. Saleh claims he had tried to negotiate a solution with Knight's president, Carroll Knight, but that Knight had not worked with Saleh to resolve his concerns.

In April 2008, Saleh sued Knight claiming breach of contract and seeking termination of their fuel-supply

contract. On May 20, 2008, Saleh signed a ten-year fuel-supply agreement with RPF, to begin on July 1, 2008. Saleh continued to buy gas from Knight during the transition and Wright testified that Saleh had explained that he would operate as Citgo until RPF converted the stations to the Shell brand. It was Wright's understanding that Saleh was simply winding up his contract with his former Citgo supplier. Knight agreed at trial that, despite Saleh's lawsuit against him, Saleh continued to pay for gas deliveries until, one day, Saleh called and said he had decided to switch to Shell and he did not intend to pay for his gas delivery. At the time Knight estimated that, among other amounts, Saleh owed him $200,000 for gasoline he had already delivered to Saleh's stations. Knight later sued Saleh for breaching his agreements and Saleh settled the claim by paying Knight $275,000.

Carroll Knight testified that in light of what had happened with Saleh's switch to RPF, he was very surprised when, sometime in July 2008, Fleckenstein asked to meet with Knight to talk about buying ethanol fuel from Knight. Knight surreptitiously taped the discussion until Fleckenstein noticed the tape recorder and ended the meeting. The trial court admitted a transcript of the recording at trial. At the meeting Fleckenstein had said he wanted to meet with Knight to talk about buying ethanol, and Knight took the opportunity to confront Fleckenstein with copies of Knight's contracts with Saleh, which were not set to expire until at least 2010. Fleckenstein repeatedly told Knight at the meeting that he had no idea that Saleh had any continuing contracts with Knight. Fleckenstein recalled that Saleh had showed him some contracts a couple years earlier and that they had "a couple of years left of them." Fleckenstein told Knight that he had only taken a cursory look at the contracts and had told Saleh he

could not rebrand any stations that were under other contracts. Fleckenstein further explained to Knight that when Saleh approached RPF to buy fuel, Saleh specifically said that his Citgo contracts were no longer in effect. As noted, and despite Fleckenstein's assertions during the meeting, Knight sued RPF for tortious interference with a contract. After hearing proofs, the trial court ruled in favor of Knight and awarded Knight $96,136.83 in damages.

## II. DISCUSSION

RPF appeals the trial court's judgment in favor of Knight. "This Court reviews a trial court's findings of fact following a bench trial for clear error and reviews de novo the trial court's conclusions of law." *Redmond v Van Buren Co*, 293 Mich App 344, 352; 819 NW2d 912 (2011).

As a preliminary matter, we hold that the trial court incorrectly framed Knight's claim as one for tortious interference with a business relationship or expectancy, rather than tortious interference with a contract. Knight specifically alleged tortious interference with a contract in the complaint and Knight's counsel argued those elements at the close of proofs at trial. Nonetheless, the trial court cited and decided the case on the basis of the elements for tortious interference with a business relationship. As this Court explained in *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 89-90; 706 NW2d 843 (2005):

> In Michigan, tortious interference with a contract or contractual relations is a cause of action distinct from tortious interference with a business relationship or expectancy. *Badiee v Brighton Area Schools*, 265 Mich App 343, 365-367; 695 NW2d 521 (2005); *Feaheny v Caldwell*, 175 Mich App 291, 301-303; 437 NW2d 358 (1989); M Civ JI

125.01 and 126.01. The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant. *Badiee, supra* at 366-367; *Mahrle v Danke*, 216 Mich App 343, 350; 549 NW2d 56 (1996); *Jim-Bob, Inc v Mehling*, 178 Mich App 71, 95-96; 443 NW2d 451 (1989); see also M Civ JI 125.01 (adding the necessary damage element to the cause of action).

By definition, tortious interference with a contract is an intentional tort. Indeed, it is well-settled that " '[o]ne who alleges tortious interference with a contractual . . . relationship must allege the intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another.' " *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 382; 689 NW2d 145 (2004), quoting *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002). As this Court explained in *Badiee*, 265 Mich App at 367:

> "A wrongful act per se is an act that is inherently wrongful or an act that can never be justified under any circumstances." *Prysak v R L Polk Co*, 193 Mich App 1, 12–13; 483 NW2d 629 (1992). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *CMI Int'l*, [251 Mich App] at 131.

In other words, in order to prevail on a claim for tortious interference with a contract, Knight had to prove "either that [RPF] committed an act that was so wrongful that [RPF] had no justification whatsoever for committing that act, and did so with malice and the intent to induce [Saleh] to breach [his] contracts . . . , or that [RPF] committed a lawful act with malicious intent to instigate [Saleh] to breach [his] con-

tracts . . . ." *Badiee*, 265 Mich App at 367. Thus, it is an essential element of a claim of tortious interference with a contract that the defendant "unjustifiably instigated or induced" the party to breach its contract. *Derosia v Austin*, 115 Mich App 647, 654; 321 NW2d 760 (1982). In *Woody v Tamer*, 158 Mich App 764, 774-775; 405 NW2d 213 (1987), this Court cited with approval 4 Restatement Torts, § 766, Comment d, pp 54-55, in which the authors explained the requirement that the defendant instigate or induce the breach:

> The essential thing is the purpose to cause the result. If the actor does not have this purpose, his conduct does not subject him to liability under this rule even if it has the unintended effect of deterring the third person from dealing with the other. It is not necessary, however, that the purpose to cause the breach of contract or failure to deal be the actor's sole or paramount purpose. It is sufficient that he designs this result whether because he desires it as an end in itself or because he regards it as a necessary, even if regrettable, means to some other end . . . .

Knight's claim fails as a matter of law because a necessary element of the cause of action is absent: RPF did not instigate Saleh's breach of his agreements with Knight or intentionally induce Saleh to breach his contracts. Undisputed evidence established that Saleh sued Knight in an effort to avoid his contractual obligations before he entered into any contract with RPF. Saleh specifically testified that he stopped buying fuel from Knight because Knight consistently underpriced gas at a nearby station, Citgo was losing business because of its connection to Hugo Chavez, and he believed Knight was overcharging him for gas deliveries.

Saleh also contacted numerous fuel suppliers, including RPF, and told them inaccurately that his contracts with Knight were not in effect. Saleh himself solicited

the bids, not RPF, and Saleh explicitly testified that no matter who became his new fuel supplier, he did not intend to continue his contracts with Knight. Moreover, the evidence established that Saleh breached his contracts with Knight before anyone at RPF even knew Saleh was obligated under any agreements with Knight. Saleh, Fleckenstein, and Wright all testified that Saleh unequivocally told RPF that his prior fuel contract was no longer in effect. Thus, undisputed evidence showed that Saleh's breach was not in any way instigated or induced by RPF. Because this essential element of a claim of tortious interference with a contract is absent, the trial court should have ruled that Knight's claim failed as a matter of law.

Knight also failed to present any evidence that RPF acted intentionally, with maliciousness, or that it committed a "per se wrongful act." Even if Knight could show some "intentional inducement" for Saleh to breach its contract, for Knight to succeed on the claim, it had to show "improper conduct" as defined above. *Trepel v Pontiac Osteopathic Hosp*, 135 Mich App 361, 376; 354 NW2d 341 (1984). It generally does not constitute improper interference with a contract if a defendant simply takes "the initiative to gain an advantage over the competition," but RPF's conduct did not even rise to this level. *Wood v Herndon & Herndon Investigations, Inc*, 186 Mich App 495, 503; 465 NW2d 5 (1990). Again, Saleh breached his contracts with Knight *before* RPF knew the contracts remained in effect, as established by unrebutted evidence that Saleh repeatedly told RPF that he had no continuing fuel supply contracts with Knight.

While the trial court believed RPF should have taken some action when Knight told Fleckenstein about the contracts at the July 2008 meeting, Knight himself

stated at the meeting that by that time Saleh had already breached the agreements and Knight had stopped all fuel supplies to Saleh's stations. Thus, RPF's conduct in contracting with Saleh, as one of several fuel suppliers from which Saleh solicited to rebrand his stations, occurred after Saleh's decision to voluntarily and independently breach the agreements, for reasons having nothing to do with any conduct initiated by RPF. In sum, Knight failed to present any evidence that RPF engaged in any misconduct, let alone malicious or wrongful conduct, to induce Saleh's breach. Accordingly, for this additional reason, Knight did not establish a claim for tortious interference with a contract as a matter of law and the trial court's judgment is reversed.[1]

Reversed.

K. F. KELLY and M. J. KELLY, JJ., concurred with SAAD, P.J.

---

[1] Because Knight's claim fails for the reasons stated in this opinion, we need not address RPF's other arguments on appeal.