*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

JOSEPH HURSHE and KELLY HURSHE,

        Plaintiffs/Counterdefendants/Third-Party Plaintiffs-Appellants,

v

ALESIA GARAFOLA,

        Defendant/Counterplaintiff/Third-Party Plaintiff-Appellee,

and

LAKE MICHIGAN CREDIT UNION,

        Third-Party Defendant/Appellee,

and

ALISA COPAS,

        Third-Party Defendant.

UNPUBLISHED
December 22, 2022

No. 358192
Oakland Circuit Court
LC No. 2019-178162-CK

Before: M. J. KELLY, P.J., and MURRAY and RIORDAN, JJ.

PER CURIAM.

        Plaintiffs Joseph and Kelly Hurshe appeal as of right the trial court order granting summary disposition in favor of defendant, Alesia Garafola, and third-party defendant, Lake Michigan Credit Union (LMCU), under MCR 2.116(C)(8) and (10). For the reasons stated in this opinion, we affirm.

## I. BASIC FACTS

The Hursches listed a house for sale in February 2019. In July 2019, Garafola contacted the Hursches' realtor and expressed interest in purchasing the property. After initial negotiation, Garafola made an offer for $540,000, contingent upon her securing a conventional mortgage in the amount of $340,000. Along with her offer, she submitted LMCU's preapproval letter for a $340,000 mortgage. The Hurshes rejected that offer. Garafola then made a second offer. This time, the purchase price was for $560,000, contingent upon Garafola securing a conventional mortgage in the amount of $448,000. The Hurshes accepted the offer. Thereafter, Garafola worked with LMCU to attempt to secure the financing for the purchase. She was ultimately unsuccessful. Garafola informed the Hurshes that the sale could not be completed because her loan application was denied. As a result, the Hurshes re-listed their property for sale and it sold for $525,000.

The Hurshes later filed a complaint against Garafola, alleging breach of contract. In her answer, Garafola denied the allegations and she asserted a counterclaim for breach of contract. Garafola also moved for summary disposition, arguing that she did not breach the purchase agreement with the Hurshes and that they had, in fact, breached the contract by refusing to return her earnest money. She also asserted that the Hurshes' complaint was frivolous. In a written order, the trial court partially granted Garafola's motion by summarily dismissing the Hurshes' breach-of-contract claim. The court denied her motion for summary disposition as to whether the Hurshes had breached the purchase agreement and it denied her motion for sanctions based on the allegedly frivolous nature of the Hurshes' complaint.

Later, the Hurshes filed an amended complaint against Garafola, bringing claims for fraud in the inducement, fraud and misrepresentation, and innocent misrepresentation. They asserted that Garafola had represented to them that she was financially capable of purchasing their home, that she was financially capable of applying for a conventional mortgage, and that she had access to substantial retirement funds that she could use for a down payment. Garafola moved for summary disposition, arguing that the fraud claims were barred by the integration clause in the purchase agreement and that, even if the claims were not barred, the Hurshes could not show that she made any misrepresentations regarding the use of her retirement accounts as a down payment for the purchase of the property. Garafola again sought summary disposition based on her claim that she was entitled to the return of her earnest-money deposit. In a written order, the court summarily dismissed the Hurshes' fraud claims and ordered the return of Garafola's earnest-money deposit.

Finally, the Hurshes filed a third-party complaint against LMCU and Alisa Copas, alleging claims for tortious interference of contract and negligence against LMCU and Copas and a claim of gross negligence against Copas.[1] LMCU and Copas moved for summary disposition, which the trial court granted.

---

[1] The claims against Copas are not at issue in this appeal.

## II. SUMMARY DISPOSITION

### A. STANDARD OF REVIEW

The Hurshes argue that the trial court erred by granting summary disposition to Garafola, LMCU, and Copas. We review de novo a trial court's decision on a motion for summary disposition. *Barnard Mfg Co, Inc v Gates Performance Engineering*, *Inc*, 285 Mich App 362, 369; 775 NW2d 618 (2009). Likewise, we review de novo questions involving the proper interpretation of a contract. *Kendzierski v Macomb Co*, 503 Mich 296, 302; 931 NW2d 604 (2019).

### B. ANALYSIS

#### 1. HURSHES' BREACH-OF-CONTRACT CLAIM AGAINST GARAFOLA

On appeal, the Hurshes argue that there is a material question of fact with regard to whether Garafola breached the purchase agreement by failing to apply for a $448,000 conventional mortgage. In support, they direct this Court to Garafola's unsigned mortgage application for a $448,000 conventional mortgage and to testimony from a LMCU employee who indicated that applications generally need to be signed before being considered submitted. Specifically, the LMCU employee testified that the "initial application has to be signed in order for us to proceed," and that future applications may or may not have to be signed in order to be considered.

Yet, the record also reflects that, despite being unsigned, LMCU proceeded on the Garafola's application for a $448,000 conventional mortgage. Indeed, on July 30, 2019, it sent a conditional approval of Garafola's application for a $448,000 conventional loan to Garafola. That letter expressly stated: "Congratulations! Your Lake Michigan Credit Union (LMCU) application has been approved subject to the conditions stated in this notice." The notice stated that the purchase price was $560,000, that the loan amount was $448,000, and that the loan type was conventional. Given that there was a loan application completed, and given that it was, in fact, processed by LMCU notwithstanding that the application was unsigned, there is no question of material fact with regard to whether Garafola applied for a conventional loan in the amount of $448,000. Moreover, it is undisputed that the approval was, in part, dependent upon Garafola selling her current home, which she was unable to do. As a result, Garafola was unable to secure a conventional mortgage in the amount of $448,000.

Garafola and LMCU explored alternative financing arrangements in an attempt to enable Garafola to be able to complete the purchase, but those alternative options were also unsuccessful. In any event, because completion of the sale was expressly conditioned on Garafola's ability to secure a conventional mortgage for $448,000, and because the submitted evidence demonstrated that she applied for a conventional mortgage for that amount but was unable to secure the mortgage, Garafola did not breach the purchase agreement by failing to complete the sale. On appeal, the Hurshes do not otherwise argue that the trial court's ruling was in error. Accordingly, we affirm the trial court's grant of summary disposition in favor of Garafola with respect to the Hurshes' breach-of-contract claim.

## 2. HURSHES' FRAUD CLAIMS AGAINST GARAFOLA

The Hurshes next assert that the trial court erred by summarily dismissing their fraud claims against Garafola. As a basis for their fraud claims, they allege that Garafola told their realtor that she had substantial retirement funds available to her that she could use to complete the sale. They note that their realtor communicated Garafola's representations to them and that they relied upon the representations to their detriment when they accepted the purchase agreement. The trial court, however, determined that the fraud claims were barred by an integration clause in the purchase agreement. Specifically, the court held that the Hurshes were not entitled to rely on any oral representations regarding the liquidation of Garafola's retirement accounts to complete the purchase of the property because the actual purchase agreement did not require such action and the integration clause effectively nullified the alleged oral representations or agreements that had not been included in the written agreement.

The trial court did not err by determining that the integration clause barred parol evidence of Garafola's alleged oral agreement to liquidate her retirement accounts. As explained by this Court in *UAW-GM Human Resources Ctr v KSL Recreation Corp*, 228 Mich App 486, 492; 579 NW2d 411 (1998), parol evidence of "contract negotiations, or of prior or contemporaneous agreements that contradict or vary the written contract, *is not admissible to vary the terms of a contract which is clear and unambiguous*." (quotation marks and citation omitted; emphasis added). In cases without an explicit integration clause, parol evidence "is admissible to show (1) that the writing was a sham, not intended to create legal relations, (2) that the contract has no efficacy or effect because of fraud, illegality, or mistake, (3) that the parties did not integrate their agreement or assent to it as the final embodiment of their understanding, or (4) that the agreement was only partially integrated because essential elements were not reduced to writing." *Id*. at 493. In cases with an express integration clause, however, the integration clause "is conclusive and parol evidence is not admissible to show that the agreement is not integrated except in cases of fraud that invalidate the integration clause or where an agreement is obviously incomplete 'on its face' and, therefore, parol evidence is necessary for the 'filling of gaps.' " *Id*. at 502, quoting 3 Corbin, Contracts, § 578, p 411. Moreover, "while parol evidence is generally admissible to prove fraud, fraud that relates solely to an oral agreement that was nullified by a valid merger clause would have no effect on the validity of the contract." *Id*. at 503. "Thus, when a contract contains a valid merger clause, the only fraud that could vitiate the contract is fraud that would invalidate the merger clause itself, i.e., fraud relating to the merger clause or fraud that invalidates the entire contract including the merger clause." *Id*. The *UAW-GM* Court reasoned that "a contract with a merger clause nullifies all antecedent claims," including "any collateral agreements that were allegedly an inducement for entering into the contract." *Id*. at 502. See also *Hanmade v Sunoco, Inc (R & M)*, 271 Mich App 145, 170; 721 NW2d 333 (2006) (determining that the plaintiffs' fraud claims did not survive a merger clause because the allegedly fraudulent representations were nullified by the integration clause).

Here, the Hurshes' claims of fraud do not survive the integration clause. The Hurshes' fraud claims turn on an alleged statement that Garafola would use her retirement funds for a down payment. The clause in the parties' purchase agreement states:

**Entire Agreement:** The parties agree that this Agreement and the referenced Addenda contain the entire agreement between Seller and Purchaser and there are no agreements, representations, statements or understandings which have been relied upon by the parties which are not stated in this Agreement.

This clause nullified any alleged agreement regarding Garafola's use of her retirement funds that was not included in the purchase agreement. See *UAW-GM*, 228 Mich App at 504. Further, the Hurshes' do not make any allegations of fraud that would invalidate the purchase agreement or the merger clause. See *id.* at 505. Nor is there record evidence suggesting that the Hurshes' were defrauded regarding the integration clause or into believing that the purchase agreement contained a provision requiring the use of retirement funds. *Id.* In sum, because the purchase agreement is unambiguous and complete on its face, evidence of Garafola's representations regarding the use of her retirement funds is inadmissible to contradict the merger clause. The trial court, therefore, did not err by summarily dismissing the Hurshes' fraud claims against Garafola.

## 3. HURSHES' CLAIMS AGAINST LMCU

The Hurshes argues that the trial court erred by granting LMCU's motion for summary disposition of their third-party claims for tortious interference with a contract, fraud and misrepresentation, and breach of fiduciary duty. We disagree.

A plaintiff bringing a claim for tortious interference with a contract must establish "(1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Knight Enterprises v RPF Oil Co*, 299 Mich App 275, 280; 829 NW2d 345 (2013) (quotation marks and citations omitted). Here, the trial court granted summary disposition of the Hurshes' breach-of-contract claim against Garafola. As indicated above, that decision was not erroneous. Given that the contract was not breached, the Hurshes cannot meet the second or third elements of their tortious-interference claim. That is, they cannot show that LMCU unjustifiably instigated Garafola to breach her contract with them. The trial court, consequently, did not err by summarily dismissing the tortious interference claim.

The Hurshes also alleged that LMCU committed fraud when it issued a preapproval letter to Garafola without requiring her to furnish financial records or other documentation. The preapproval letter indicated that Garafola had been preapproved for a conventional mortgage in the amount of $340,000, for a purchase price of $540,000. According to the language of the letter, the preapproval was based on "automated underwriting review of the information you have provided to LMCU." The letter also stated that the preapproval was subject to the underwriting approval of supporting income and asset documentation, property appraisal and title commitment, all other loan conditions as required by underwriting, and mortgage insurance, if applicable. The letter added that a conditional offer of preapproval for a loan was *not* a contract to loan or actual approval for a specific loan.

The Hurshes did not present any evidence that the preapproval letter for a $340,000 mortgage was false or that LMCU knew that it was false. Further, the Hurshes cannot demonstrate that they reasonably relied on the preapproval letter for a $340,000 mortgage to induce them to enter into the purchase agreement where the agreement was contingent on Garafola being able to secure a conventional mortgage of $448,000—an amount which was more than $100,000 greater

than the preapproved amount. See *Foreman v Foreman*, 266 Mich App 132, 141-142; 701 NW2d 167 (2005) (stating that to prevail on a fraud claim, a plaintiff must also show that any reliance on a defendant's representations was reasonable). The Hurshes have not alleged or presented any evidence that LMCU made representations that Garafola had been preapproved or would be approved for a mortgage for $448,000. On this record, therefore, the trial court properly granted LMCU's motion for summary disposition with respect to the fraud claims.

Finally, the Hurshes alleged that, as it related to LMCU's preapproval letter and its processing of Garafola's loan applications, LMCU owed them a fiduciary duty of good faith and loyalty because they were members of LMCU. In support, the Hurshes state that a fiduciary relationship existed because LMCU was also their mortgage lender. However, a fiduciary relationship generally does not exist in a lender-borrower context. *Farm Credit Servs of Mich's Heartland, PCA v Weldon*, 232 Mich App 662, 680; 591 NW2d 438 (1998). And the Hurshes did not allege any facts beyond a lender-borrower relationship that would establish a fiduciary relationship. Moreover, where a fiduciary relationship does exist, the fiduciary only has a duty to act for the benefit of the principal regarding matters within the scope of the relationship. *Prentis Family Foundation v Barbara Ann Karmanos Cancer Institute*, 266 Mich App 39, 43; 698 NW2d 900 (2005). The transaction at issue here did not involve LMCU's relationship with them as their mortgage lender. Rather, it involved a proposed lender-borrower relationship between LMCU and Garafola. The Hurshes cannot rely on their own lender-borrower relationship with LMCU to establish fiduciary duties to them arising from any lender-borrower relationship between LMCU and Garafola. As a result, the trial court did not err by summarily dismissing the claim for breach of fiduciary duty.

Affirmed. Garafola and LMCU may tax costs as the prevailing parties. MCR 7.219(A).

/s/ Michael J. Kelly
/s/ Christopher M. Murray
/s/ Michael J. Riordan