*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

MACH 3 MEDICAL, INC.,

Plaintiff-Appellant,

v

ENVISION MEDICAL GROUP, PLLC,
VILLAGEMD EASTERN MICHIGAN, LLC, and
VMD PRIMARY PROVIDERS EASTERN
MICHIGAN,

Defendants-Appellees.

UNPUBLISHED
July 10, 2025
3:29 PM

No. 367924
Oakland Circuit Court
LC No. 2022-195861-CB

Before: GADOLA, C.J., and RICK and MARIANI, JJ.

PER CURIAM.

Plaintiff, Mach3 Medical, Inc. (Mach3), appeals as of right an opinion and order granting summary disposition to defendants, Envision Medical Group, PLLC (Envision), VillageMD Eastern Michigan, LLC (VillageMD), and VMD Primary Providers Eastern Michigan (VMD), under MCR 2.116(C)(8) (failure to state a claim). We affirm.

## I. FACTUAL BACKGROUND

This is a most peculiar lawsuit, in which Mach3 claims damages for breach of a contract under which it performed no services, claims fraudulent misrepresentation concerning an asset transfer to which it consented, and claims tortious interference with the contract by the assignees of the contract (VillageMD and VMD) who became parties to the agreement. The claims in this case concern a Business Associate Agreement (BAA) and a Client Services Agreement (CSA), which Mach3 initially entered into with Envision. Mach3 is a company that provides billing and coding software and related services to medical providers. Envision is a company that owns and operates medical facilities, with its primary place of business situated in Oakland County. Mach3 and Envision signed the BAA on August 4, 2020, and the CSA on January 20, 2021. As part of the agreement, Mach3 was to "provide charting and creation of Subjective, Objective, Assessment and Plan notes ("SOAP Notes") directly through [Envision's] Electronic Medical Record ("EMR")

-1-

system." In return, Envision was to "review and approve each SOAP Note and coding upon submission by Mach3."

In May 2021, three Mach3 representatives submitted "External User Access Request" forms and "User Access Acknowledgement and Agreement" forms, seeking access to Envision's EMR system. At the time, Envision was in the middle of transferring its assets to defendants VillageMD and VMD. Like Envision, VillageMD and VMD are companies that operate medical facilities in Michigan. Envision informed Mach3 that VillageMD and VMD would take over the CSA with Mach3 once the transfer was complete.

Envision entered an asset purchase agreement with VillageMD and VMD on September 30, 2021. On October 21, 2021, Mach3 received a letter from Envision requesting that Mach3 consent to have the CSA assigned from Envision to VillageMD and VMD. Mach3 agreed to the assignment on October 25, 2021. In February 2022, a representative of Mach3 approached a representative from VillageMD and VMD and asked to move forward with providing services under the CSA, but never received a response.

In August 2022, Mach3 filed a complaint against Envision, VillageMD, and VMD, accusing them of breach of the CSA (Count I), fraudulent misrepresentation against Envision (Count II), and tortious interference with a contract against VillageMD and VMD (Count III). In lieu of answering the complaint, Envision filed a motion for summary disposition under MCR 2.116(C)(8). VillageMD and VMD filed a separate motion for summary disposition, also under MCR 2.116(C)(8). Defendants generally made the same arguments in response to Mach3's claim that they breached the CSA. Specifically, they contended that under the CSA, any delay or failure to perform under the contract by the client could not be considered a breach of contract, as section 4 of the CSA states that "[t]o the extent that Mach3 is delayed or unable to perform its obligations under this Agreement as a result of Client's failure to perform its obligations, in a timely manner or otherwise, such delay or failure to perform by Client will not be deemed a breach by Mach3 . . . ." Thus, according to defendants, Mach3 failed to establish that defendants actually breached the contract.

VillageMD and VMD additionally argued that there was no breach of contract because Mach3 never actually did any work for defendants, either before or after the asset transfer, suggesting there was no obligation on defendants' part to pay Mach3 for services rendered. Likewise, Envision argued that damages were not recoverable given the terms of the contract, stating:

> Nowhere in its Complaint, does Plaintiff allege that it performed services under Paragraph 1, and that it was not paid for it. Instead, Plaintiff alleges that it merely "attempt[ed] to move forward in providing services . . ." Plaintiff essentially alleges that it was unable to move forward with providing services because of . . . Envision's alleged delay in providing access to its EMR System. This is not an alleged breach of the Agreement for which Plaintiff is entitled to compensation. The unambiguous language of the Agreement between the parties clearly provides that Plaintiff is only to be paid for services described in Paragraph 1 of the Agreement.

Without evidence of a breach, defendants generally argued that there could be no viable claim for damages.

As to Mach3's claim of fraudulent misrepresentation against Envision, Envision observed that Mach3 contended that Envision falsely represented that the CSA would be transferred to VillageMD and VMD. Envision contended that there was no evidence of fraudulent misrepresentation because the CSA *was* transferred to VillageMD and VMD—and Mach3 provided written consent to that transfer in October 2021. Envision asked that the court grant its motion for summary disposition, and separately argued that the trial court should order Mach3 to post a surety bond under MCR 2.109, on the basis of what it characterized as the weak and unsupported claims made in Mach3's complaint.

Finally, VillageMD and VMD addressed Mach3's tortious interference claim against them. They argued that the claim primarily failed because there was no breach of the CSA, and because VillageMD and VMD were not third parties to the CSA. Given that the CSA was assigned to VillageMD and VMD, they further argued that "VillageMD would be liable for a breach of the CSA, whether it occurred before or after December 8, 2021. But VillageMD cannot be liable both for a breach of contract and for tortiously inducing the same breach." Additionally, VillageMD and VMD contended that Mach3 could not show tortious interference because there was no evidence that they committed a "per se wrongful act[.]" According to VillageMD and VMD, without evidence that they did something illegal or fraudulent, "it is not tortious interference for a company to act in its own business interests." VillageMD and VMD thus asked that the court grant its motion for summary disposition of the tortious interference claim.

Mach3 responded that defendants' interpretation of the contract as not requiring it to allow Mach3 to perform services would render the agreement illusory. Mach3 likewise asserted that it adequately pleaded damages arising from the breach. As to the claim of fraudulent misrepresentation against Envision, Mach3 generally argued that Envision knowingly made false representations about the contract being honored after the asset sale, and thus committed fraudulent misrepresentation.

As to the claim of tortious interference against VillageMD and VMD, Mach3 argued that it adequately pleaded tortious interference against VillageMD and VMD for the period before the contract was assigned. Mach3 additionally contended that a "per se wrongful act" was not required to establish this claim, and that it only needed to show that VillageMD and VMD intentionally and improperly interfered with the contract. Mach3 argued that it did so by showing that VillageMD and VMD ensured that Envision did not commence performance under the CSA while negotiating the asset transfer. According to Mach3, VillageMD's and VMD's actions were motivated by malice and were intentionally designed to invade Mach3's contractual rights. Thus, Mach3 contended that VillageMD and VMD's motion for summary disposition should not be granted.

The trial court dispensed with hearing oral argument on the motions. In September 2023, it issued an opinion and order granting defendants' motions for summary disposition under MCR 2.116(C)(8). Regarding the claim that defendants breached the CSA, the trial court found that summary disposition was warranted because the CSA did not require Envision or VillageMD and VMD to send Mach3 any work, or to pay for services that Mach3 did not perform. The court observed that Mach3 expressly admitted it did not perform any services. The court likewise noted

-3-

that under the CSA, the client's failure to perform could not be considered a breach of contract. Thus, the court found that no breach of contract occurred.

As to the fraudulent misrepresentation claim against Envision, the trial court observed that Mach3 alleged that Envision falsely stated that the CSA would be assumed by VillageMD and VMD. However, the trial court found that this representation was true, as evidenced by the asset purchase agreement transferring assets from Envision to VillageMD and VMD. Furthermore, the trial court found that Mach3 consented to the assignment of the contract to VillageMD and VMD. Thus, according to the trial court, Mach3's claim that defendants never intended to honor the contract was not supported by the record.

Finally, as to the claim of tortious interference against VillageMD and VMD, the court found that because there was no breach of the CSA, tortious interference could not have caused a breach. Further, the court found that VillageMD and VMD were assignees to the CSA, not third parties, and therefore could not tortiously interfere with the contract. The court additionally found that Mach3 failed to allege that VillageMD and VMD committed any wrongful act with malicious intent. For all of those reasons, the court elected to grant summary disposition to defendants under MCR 2.116(C)(8). This appeal followed.

## II. ANALYSIS

Mach3 argues that the trial court erred by granting summary disposition to defendants on all three of its claims: breach of contract against all defendants, fraudulent misrepresentation against Envision, and tortious interference against VillageMD and VMD. We disagree.

## A. STANDARD OF REVIEW

In general, this Court "review[s] de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). Defendants brought their motion for summary disposition under MCR 2.116(C)(8) (failure to state a claim), and the trial court decided the motion under the same subsection, noting that "[e]xhibits attached to pleadings may be considered under MCR 2.116(C)(8) because they are part of the pleadings pursuant to MCR 2.113(C)."[1] Under MCR 2.113, a contract attached to a pleading becomes part of the pleading for all purposes, including for summary disposition purposes. Specifically, MCR 2.113(C)(1) requires that if a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading. MCR 2.113(C)(2) further clarifies that such an attachment is considered part of the pleading for all purposes. See also *Abdelmaguid v Dimensions Ins Group, LLC*, ___ Mich App ___; ___ NW3d ___ (2024) (Docket No. 361674); slip op at 5 (stating that a consent judgment and an assignment of rights between parties that had been attached to the complaint were part of the pleadings for summary disposition purposes, including for review under MCR 2.116(C)(8)).

---

[1] MCR 2.113(C) governs the form and captioning of pleadings, as well as the attachment of exhibits and related documents.

A motion under MCR 2.116(C)(8) "tests the legal sufficiency of a claim based on the factual allegations in the complaint." *El-Khalil*, 504 Mich at 159. In evaluating a (C)(8) motion, the court "must accept all factual allegations as true, deciding the motion on the pleadings alone." *Id*. at 160. "A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery." *Abdelmaguid*, ___ Mich App at ___; slip op at 5 (quotation marks and citation omitted).

## B. BREACH OF CONTRACT

A party claiming breach of contract must show "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Total Quality, Inc v Fewless*, 332 Mich App 681, 694; 958 NW2d 294 (2020) (quotation marks and citation omitted). A valid contract has five elements: "(1) parties competent to contract, (2) a proper subject matter, (3) a legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *Calhoun Co v Blue Cross Blue Shield of Mich*, 297 Mich App 1, 13; 824 NW2d 202 (2012) (quotation marks and citation omitted). The primary goal of contract interpretation is to give effect to the parties' intent. *Total Quality, Inc*, 332 Mich App at 694. Contract language is given its plain and ordinary meaning, and if a contract is unambiguous, it must be applied and enforced as written. *Id*. If it is ambiguous, its meaning "is for the jury to decide." *Pego v Karamo*, ___ Mich App ___ ; ___ NW3d ___ (2024) (Docket No. 371299); slip op at 18. "A contract is ambiguous when it is equally susceptible to different interpretations or when two provisions irreconcilably conflict with each other." *Id*.

Mach3's performance under the contract was contingent on performance by the client—first Envision, and then VillageMD and VMD. According to the terms of the CSA, Mach3 required access to the client's EMR system in order to create SOAP notes.

The trial court correctly found that no breach of contract occurred both because the contract did not require the client to order services from Mach3, and because Mach3 never suffered damages because it never performed services under the contract. Simply put, there could be no damages to Mach3 under the contract's terms for work it never performed. The trial court aptly likened this claim to "a law firm signing an engagement letter with a rate for billable hours, and then suing the client for 100 hours of work [the firm] never performed." There simply is no language in the CSA requiring the defendants to give work to Mach3, and Mach3 admits that it performed no services under the agreement. Nor is there any language in the CSA promising that defendants would pay Mach3 even if Mach3 performed no services. To the contrary, Paragraph 8 of the CSA, entitled "Payment for Services," expressly contemplates that payment to Mach3 will be "[i]n exchange for the Services described" in the CSA.

This was effectively a fee for services arrangement, under which no services were rendered. Although Mach3 styles its claim as one for money damages, what it appears to seek is specific performance of the contract. But this is a claim Mach3 failed to plead, and we decline to rewrite the claim on Mach3's behalf. Mach3 sought money damages to which they are clearly not entitled. *Van Buren Charter Twp v Visteon Corp*, 319 Mich App 538, 550; 904 NW2d 192 (2017) ("The party asserting a breach of contract has the burden of proving its damages with reasonable certainty, and may recover only those damages that are the direct, natural, and proximate result of the breach." (quotation marks and citation omitted)).

In arguing otherwise, Mach3 points to Paragraph 7 of the CSA, which is titled "Pricing" and lays out a pricing structure for Mach3's services. We do not see in this provision, however, any promise to pay Mach3 even if Mach3 never performed any services, particularly when the provision is read alongside the clear language of Paragraph 8. See, e.g., *Auto-Owners Ins Co v Seils*, 310 Mich App 132, 148; 871 NW2d 530 (2015) ("[C]ontractual terms must be construed in context and read in light of the contract as a whole[.]") (citations omitted). Nor does the provision contain any promise to request services from Mach3. Similarly, Mach3 points to Paragraph 3(c) of the CSA, which states that "Client agrees to upload the Audio Recordings promptly to the App for Mach3 to commence its charting and coding services." When, however, that provision is read "in context and . . . in light of the contract as a whole," *id.*, it is apparent that its promise simply pertains to how the client will act (i.e., "promptly") in requesting services from Mach3; it does not go so far as to require that services be requested in the first place or that Mach3 be paid even if they are not. And again, Mach3 did not bring a claim for specific performance of the contract.

Paragraph 4 of the CSA also provides no support for Mach3's position. Paragraph 4 expressly recognizes that "Mach3's performance under this Agreement may be contingent upon the performance of certain actions by Client." The provision thus contemplates that Mach3's performance depends upon the client performing its obligations under the contract. But Paragraph 4 goes on to state that if Mach3 is stymied in its ability to perform its obligations by the client's failure to perform its own obligations, "such delay or failure to perform by Client will not be deemed a breach by Mach3." The parties dispute whether this provision means that Mach3 will not deem the client's delay or failure to be a breach of the contract, or instead means that Mach3's own deficiency in performance will not be deemed a breach if it results from the client's delay or failure. Either way, however, nothing about this provision suggests that, if the client were never to request services from Mach3, the client would be deemed to have breached the contract. The good faith language that appears at the conclusion of Paragraph 4 contemplates a failure by either party to perform its obligations with respect to work actually requested by the client and undertaken by Mach3. But if work never commences, there is no obligation under the contract to negotiate in good faith to resolve a non-existent problem.

In sum, Mach3's breach of contract claim fails for two reasons. First, given the lack of any language requiring the defendants to give work to Mach3, there was no breach. And second, because Mach3 never performed any work, it suffered no damages. Mach3's disappointment over the fact its client never asked it to perform services does not give it a claim for breach of contract.

## C. FRAUDULENT MISREPRESENTATION

"In Michigan, fraud must be established by clear and convincing evidence and must never be presumed." *Deschane v Klug*, 344 Mich App 744, 750; 2 NW3d 131 (2022) (quotation marks and citation omitted). To prove a claim of fraudulent misrepresentation, the plaintiff must establish:

> (1) the defendant made a material representation; (2) the representation was false; (3) when the representation was made, the defendant knew that it was false, or made it recklessly, without knowledge of its truth, and as a positive assertion; (4) the defendant made it with the intention that the plaintiff should act upon it; (5) the

-6-

plaintiff acted in reliance upon the representation; and (6) the plaintiff thereby suffered injury. [*Id*. (quotation marks and citation omitted).]

Mach3 has consistently maintained that Envision fraudulently promised that VillageMD and VMD would take over the CSA following the completion of Envision's transfer of assets to VillageMD and VMD. Mach3 claims that these representations were false and that they were made intentionally or recklessly, with the intent that Mach3 would rely on them to its detriment. Mach3 claims that it did rely on these representations, and was left without recourse when VillageMD and VMD failed to request work under the CSA. This argument has no merit. As the trial court found below, Envision informed Mach3 of the asset transfer and requested that Mach3 agree to the transfer of the CSA from Envision to VillageMD and VMD. Mach3 did so by having one of its representatives sign a form agreeing to the assignment on October 25, 2021. "To establish a claim of fraudulent misrepresentation, the plaintiff must have reasonably relied on the false representation." *Cummins v Robinson Twp*, 283 Mich App 677, 696; 770 NW2d 421 (2009). "There can be no fraud where a person has the means to determine that a representation is not true." *Id*. (quotation marks and citation omitted). Here, Envision's representation that the CSA would be transferred to VillageMD and VMD was true, and Mach3 was clearly aware of it. That VillageMD and VMD did not ultimately seek services from Mach3 does not mean that Envision fraudulently misrepresented anything related to the actual assignment of the CSA. Nor does it mean, as Mach3 suggests, that Envision fraudulently misrepresented that the terms of the contract would be honored post-assignment, given that those terms did not require Envision, or VillageMD and VMD after it, to seek services from Mach3. Thus, Mach3's argument lacks merit.

## D. TORTIOUS INTERFERENCE

The elements of tortious interference with a contract are: "(1) the existence of a contract, (2) breach of the contract, and (3) an unjustified instigation of the breach by the defendant" that damages an aggrieved party to the contract. *Knight Enterprises, Inc v RPF Oil Co*, 299 Mich App 275, 280; 829 NW2d 345 (2013). To show that the contract was breached, the plaintiff must establish that "the defendant induced or otherwise caused nonperformance of the contract." *Int'l Outdoor, Inc v SS Mitx, LLC*, ___ Mich App ___; ___ NW3d ___ (2023) (Docket No. 359082; 359811); slip op at 11 (quotation marks and citation omitted). Additionally, to show that a defendant instigated the breach, the plaintiff must establish the "intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights of another." *Id*. at ___; slip op at 11-12 (quotation marks and citation omitted). If the defendant did not commit a per se wrongful act, "the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Knight Enterprises*, 299 Mich App at 280.

Mach3 argues that VillageMD and VMD intentionally interfered with Mach3's contractual relationship with Envision by making sure that Envision did not perform its duties under the CSA while the asset transfer was ongoing. Mach3 further argues that VillageMD and VMD refused to perform under the CSA after the asset transfer was complete. The latter does not constitute tortious interference with a contract because once the asset transfer was complete, VillageMD and VMD were parties to the contract and could not tortiously interfere with it. And because none of the defendants, including Envision, were contractually obligated to supply work to Mach3, VillageMD

and VMD could not have interfered with the contract before the asset transfer to Mach3's detriment.

Mach3 loosely alleges that VillageMD and VMD interfered with Envision's ability to perform under the contract, but completely fails to explain how or why VillageMD and VMD allegedly engaged in this conduct. Envision likely did not perform under the contract because it was in the middle of transferring its assets to VillageMD and VMD during the 2021 calendar year. Regardless, nothing about that asset transfer process indicates that VillageMD and VMD intentionally committed a wrongful act or engaged in unlawful conduct designed to interfere with the CSA. See *Int'l Outdoor, Inc*, ___ Mich App at ___; slip op at 11-12; *Knight Enterprises*, 299 Mich App at 280. Taking Mach3's factual allegations as true, as this Court must when evaluating a motion for summary disposition under MCR 2.116(C)(8), Mach3 has failed to properly allege a claim of tortious interference with a contract.

Affirmed. As the prevailing parties, appellees may tax costs.

/s/ Michael F. Gadola
/s/ Michelle M. Rick
/s/ Philip P. Mariani