*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

---

JAMES DERRICK MAPSON,

      Plaintiff-Appellee,

v

FARMERS INSURANCE EXCHANGE,

      Defendant,

and

MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION,

      Defendant-Appellant.

UNPUBLISHED
September 14, 2023

No. 361240
Oakland Circuit Court
LC No. 2021-190970-NF

---

TRAVIS BOUCHARD,

      Plaintiff-Appellee,

v

FARMERS INSURANCE EXCHANGE,

      Defendant,

and

MICHIGAN CATASTROPHIC CLAIMS
ASSOCIATION,

      Defendant-Appellant.

No. 362756
Oakland Circuit Court
LC No. 2022-192261-NF

---

Before: LETICA, P.J., and MURRAY and PATEL, JJ.

-1-

PER CURIAM.

In Docket No. 361240, defendant Michigan Catastrophic Claims Association (MCCA) appeals by leave granted[1] the trial court order denying its motion for summary disposition in favor of plaintiff, James Derrick Mapson (Mapson). In Docket No. 362756, defendant MCCA appeals by leave granted[2] the trial court order denying its motion for summary disposition in favor of plaintiff, Travis Bouchard (Bouchard). After a joint motion by the parties, this Court consolidated the appeals "to advance the efficient administration of the appellate process."[3] We reverse the trial courts' orders denying MCCA's motions for summary disposition and remand for entry of orders granting summary disposition in favor of MCCA.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In Docket No. 361240, Mapson filed a complaint against Farmers Insurance Exchange (Farmers), seeking to enforce a June 21, 2005 judgment. Mapson also requested damages from MCCA, alleging that it conspired and tortiously interfered with his contract with Farmers. Specifically, Mapson asserted that he was injured in an automobile accident on March 3, 1996, that rendered him a "C5 complete quadriplegic." He had no upper or lower limb functions and was completely dependent on others for daily living and safety, requiring 24-hour a day attendant care. In the underlying judgment, $38.00 an hour, 24-hours a day, was deemed a reasonable rate for family-provided attendant care. Despite the judgment, in June 2021, Farmers allegedly notified Mapson of its intent to pay for the home-based services contrary to the previously agreed-upon rate. Mapson raised two claims against Farmers, violation of the no-fault act, MCL 500.3101 *et seq.*, and breach of contract.

With regard to MCCA, Mapson alleged that it interfered with the contract between Mapson and Farmers. Specifically, he submitted that MCCA agreed to reimburse Farmers for amounts in excess of $250,000, under MCL 500.3104(1). Mapson claimed that MCCA did not have the authority: (1) to withhold payment for the ultimate loss to the insured, (2) to determine reasonableness of the charges, and (3) to preapprove the insurer's adjusting decisions. He asserted that MCCA acted wrongfully and with malice to cause Farmers to breach its agreement. Mapson also alleged that Farmers and MCCA conspired and acted in concert to deny the underlying judgment, causing him damages.

MCCA moved for summary disposition under MCR 2.116(C)(5) and (C)(8), asserting that it was created by the Legislature to address the concern that the provision of unlimited personal protection insurance (PIP) benefits for catastrophic injuries would be too costly and burden the

---

[1] *Mapson v Farmers Ins Exch*, unpublished order of the Court of Appeals, entered October 27, 2022 (Docket No. 361240).

[2] *Bouchard v Farmers Ins Exch*, unpublished order of the Court of Appeals, entered February 2, 2023 (Docket No. 362756).

[3] *Mapson v Farmers Ins Exchange*, unpublished order of the Court of Appeals, entered April 14, 2023 (Docket Nos. 361240; 362756).

member insurers. Thus, MCCA reimbursed or indemnified member insurers for the PIP losses that they incurred in excess of a catastrophic level. Accordingly, MCCA did not write insurance policies, was not a party to insurance contracts, and served to guard against unreasonable settlements of catastrophic claims. MCCA asserted that it was given the authority, by statute and through its plan of operation, to preapprove an insurance claim, and an insurer's failure to obtain MCCA preapproval could result in a denial of all or a portion of a request for reimbursement. Additionally, member insurers had to report catastrophic claims and advise of developments that may impact MCCA's interest. It was submitted that Mapson failed to state a claim because MCCA was authorized to provide oversight by statute, MCL 500.3104, as well as through its plan of operation.

MCCA further alleged that, to succeed on a claim for tortious interference, Mapson must assert an intentional performance of a per se wrongful act that is unjustified in law and serves the purpose of invading the contractual or business rights of another. However, Mapson did not demonstrate that MCCA acted intentionally and improperly because MCCA acted within its authority. Farmers was required to notify MCCA about Mapson's claim and any development likely to materially affect MCCA. And, Farmers was permitted to seek preapproval for a claim and determine whether and how much should be paid for a claim. It then could seek reimbursement from MCCA. Because MCCA acted within the authority it was granted, MCCA asserted that Mapson failed to state a claim and it was entitled to summary disposition. And, because the underlying claim of tortious interference of a contract failed, MCCA further contended that Mapson's claim of civil conspiracy could not be maintained.

Mapson opposed MCCA's dispositive motion, alleging that MCCA's position was contrary to the holding in *United States Fidelity Ins & Guaranty Co (USFIG) v Mich Catastrophic Claims Ass'n (MCCA) (On Rehearing)*, 484 Mich 1; 795 NW2d 101 (2009). Specifically, Mapson claimed that the *USFIG* Court limited MCCA's authority "to adjusting the 'practices and procedures' of the member insurers and d[id] not encompass adjustment to the payment amount agreed to between claimants and member insurers." *Id*. at 6. Mapson further asserted that MCCA had no right to challenge the reasonableness of a claim. Rather, MCL 500.3157(7) did not allow an insurance company to reduce insurance payments by 45% when there was no charge by a provider for services. The value of services was controlled by a reasonableness standard. MCCA was not entitled to force member insurers into improper adjustment practices or to use threats of failure to reimburse the no-fault insurer to compel compliance with MCCA's rate determinations. Thus, Mapson submitted that MCCA interfered with Farmers' insurance payments, causing the reduced benefit amount. Because MCCA's actions were improper, Mapson satisfied the elements of tortious interference with a contract and properly pleaded a conspiracy claim. The trial court denied MCCA's motion for summary disposition by simply stating that Mapson had stated a claim. From this decision, MCCA appeals by leave granted.

In Docket No. 362756, Bouchard filed a complaint against Farmers and MCCA arising from the payment of no-fault benefits. Specifically, Bouchard alleged that he was rendered a paraplegic with a traumatic brain injury and posttraumatic diabetes on December 4, 1999, when the motorcycle he was riding on was struck by a truck that ran a stop sign. Because of the residual effects of his injuries, Bouchard claimed to continue to require home-based, skilled nursing care. After multiple disputes over reasonable fees, Farmers paid a daily rate of $672 (or $28 per hour) from April 1, 2009 through July 1, 2021. However, when Farmers subsequently sought

-3-

preapproval of a rate of $28 an hour, MCCA rejected the rate without negotiation, stating that $16.03 was the approved rate. Consequently, against Farmers, Bouchard alleged violations of the no-fault act and breach of contract.

With regard to MCCA, Bouchard alleged that it was required to assume 100% of all liability of amounts paid by Farmers above the $250,000 threshold set forth in MCL 500.3104. Bouchard contended that MCCA had no authority to require that insurers obtain preapproval of amounts and to refuse to pay the loss by disagreeing with an adjusting decision made by a member insured. It was submitted that MCCA engaged in intentional wrongful acts or lawful acts with malice and unjustified in law by: (1) requiring that Farmers seek preapproval of payment of benefit amounts; (2) unlawfully interfering with Farmers contract with Bouchard to pay attendant care benefits at a previously determined reasonable rate; (3-4) threatening that it would not indemnify Farmers if it failed to follow MCCA's rules or if it disagreed with MCCA's adjusting decision; (5) refusing to reimburse for previously determined reasonable rates; and (6) causing Farmers to breach its contract with Bouchard.

MCCA filed its motion for summary disposition under MCR 2.116(C)(8), and raised essentially the same arguments presented in the Mapson case. Specifically, it alleged that MCCA was granted authority by statute and through its plan of operation to oversee catastrophic claims and ensure that their payment did not overwhelm the no-fault system. Therefore, MCCA did not act improperly or lawfully with malice when it rendered a preapproval decision regarding the reimbursement rate negotiated between Bouchard and Farmers.

Bouchard opposed the dispositive motion, alleging that MCCA misconstrued the caselaw and its statutory authority. Similar to the arguments raised by Mapson, Bouchard alleged that MCCA was not a "super-adjuster" of no-fault claims and could not force member insurers to reimburse claims simply because it disagreed with the negotiated rates. Therefore, Bouchard alleged that it satisfied the elements of tortious interference with a contract. The trial court denied MCCA's motion for summary disposition, but questioned the soundness of its ruling. When apprised that MCCA would seek interlocutory relief with this Court, the trial court granted a stay.

## II. STANDARD OF REVIEW

A trial court's ruling on a motion for summary disposition is reviewed de novo. *Meyers v Rieck*, 509 Mich 460, 468; 983 NW2d 747 (2022). Summary disposition is appropriate when the opposing party failed to state a claim on which relief can be granted, MCR 2.116(C)(8).[4] *In re Lett Estate*, 314 Mich App 587, 595; 887 NW2d 807 (2016). Under MCR 2.116(C)(8), the legal sufficiency of the claim is examined by the pleadings alone with the factual allegations accepted as true and viewed in a light most favorable to the nonmoving party. *Id*.

---

[4] Although MCCA also moved for summary disposition premised on MCR 2.116(C)(5) (legal capacity to sue), there is no indication that it presented legal authority in support. Therefore, this argument is not addressed on appeal.

## III.  ANALYSIS

MCCA contends that the trial courts erred in denying MCCA's dispositive motions and allowing the claims of tortious interference and civil conspiracy to proceed.  We agree.

"The elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Knight Enterprises, Inc v RPF Oil Co*, 299 Mich App 275, 279-280; 829 NW2d 345 (2013) (citation omitted).  To support a claim of tortious interference with a contract, a plaintiff must allege the "intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Derderian v Genesys Health Care Sys*, 263 Mich App 364, 382; 689 NW2d 145 (2004) (quotation marks and citation omitted).  A wrongful per se act is defined as an act that "is inherently wrongful or an act that can never be justified under any circumstances." *Knight Enterprises, Inc*, 299 Mich App at 280 (quotation marks and citation omitted).  If a defendant's conduct is not deemed wrongful per se, the plaintiff must allege specific, affirmative acts to corroborate the unlawful purpose of the interference.  *Id*.  Further, to support a claim of tortious interference with a contract, the defendant must unjustifiably instigate or induce a party to breach its contract.  *Id*. at 281.  Liability will only be imposed if the defendant's purpose is to cause the result.  *Id*.

Civil conspiracy is defined as "a combination of two or more persons, by some concerted action, to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by criminal or unlawful means." *Urbain v Beierling*, 301 Mich App 114, 131-132; 835 NW2d 455 (2013) (quotation marks and citation omitted).  To support a claim of civil conspiracy, a plaintiff must assert some underlying tortious conduct.  *Id*. at 132.  "[A] claim for civil conspiracy may not exist in the air; rather it is necessary to prove a separate, actionable tort." *Advocacy Org for Patients & Providers v Auto Club Ins Ass'n*, 257 Mich App 365, 384; 670 NW2d 569 (2003) (quotation marks and citation omitted).  Thus, when a plaintiff failed to state a prima facie case of tortious interference, the conspiracy claim also failed.  See *id*.

"The MCCA is an unincorporated nonprofit association, whose purpose is to provide insurers with indemnification for PIP policies that exceed a certain threshold." *USFIG* 484 Mich at 18-19.  The MCCA is empowered to establish procedures to protect itself from unreasonable settlements when the claim may exceed the statutory threshold and affect the MCCA.  *Id*. at 20.  Accordingly, the MCCA has the authority to intervene *before a settlement* is reached "and adjust situations that it anticipates might otherwise expose it to unreasonable indemnification costs." *Id*. at 22.  The requirement that proposed settlement agreements be submitted to MCCA for approval allows it to protect against having to pay unreasonable claims from member insurers.  *Id*.

In *Hope Network Rehabilitation Servs v Mich Catastrophic Claims Ass'n*, ___ Mich App ___, ___; ___ NW2d ___ (2023) (Docket No. 355372), slip op at 1-2, the plaintiff, Hope Network Rehabilitation Servs (Hope), provided services to an insured, Marilyn Koyl, and received an assignment to pursue claims against Koyl's insurance company, Farm Bureau General Insurance Company.  Hope subsequently amended its complaint to raise the claim of tortious interference with a business relationship or expectancy against the MCCA, claiming it interfered with Hope's ability to obtain payment for the benefits at issue.  *Id*.  MCCA moved to dismiss the tortious

interference claim under MCR 2.116(C)(8), but the trial court denied the dispositive motion, concluding that Hope met its burden of stating a cause of action. *Id*. at 2-3.

This Court granted MCCA's application for leave to appeal. *Id*. at 1. After delineating the elements of tortious interference with a business relationship or expectancy, this Court concluded that unlawful action was not established in light of MCCA's authority, stating:

> With respect to the third element, interference alone will not support a claim under this theory. "[T]o satisfy the third element, the plaintiff must establish that the defendant acted both intentionally and either improperly or without justification." *Puetz v Spectrum Health Hosps*, 324 Mich App 51, 78; 919 NW2d 439 (2018) (quotation marks and citation omitted). A tortious interference with a business relationship claim requires an allegation "of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or the business relationship of another." *CMI Int'l, Inc v Intermet Int'l Corp*, 251 Mich App 125, 131; 649 NW2d 808 (2002) (quotation marks and citation omitted). "If the defendant's conduct was not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Id.* "Where the defendant's actions were motivated by legitimate business reasons, its actions would not constitute improper motive or interference." *Dalley* [*v Dykema Gossett, PLLC*, 287 Mich App at 296, 324; 788 NW2d 679 (2010)] (quotation marks and citation omitted). Thus, if a defendant's actions were motivated by a legitimate business reason, those actions do not constitute improper motive or interference, and they cannot be wrongful per se. *Badiee v Brighton Area Sch[s]*, 265 Mich App 343, 366; 695 NW2d 521 (2005). "If the defendant's conduct is not wrongful per se, the plaintiff must demonstrate specific, affirmative acts that corroborate the unlawful purpose of the interference." *Id.* at 367 (quotation marks and citation omitted).

> In this case, the sole conduct alleged was that the MCCA had either withheld or threatened to withhold reimbursement to Farm Bureau, and that by doing so the MCCA intentionally interfered with Hope's business relationship and/or expectancy with Farm Bureau, inducing, causing, or contributing to a breach of that relationship or expectancy. Hope's alleged business expectancy was that "its reasonable charges for the reasonably necessary services, products and/or accommodations that it provided to Marilyn Koyl for her care, recovery, or rehabilitation from her accident-related injuries would be covered and, ultimately, paid for by Defendant Farm Bureau." Hope's act of filing a complaint against Farm Bureau for its alleged refusal to pay demonstrated that Hope and Farm Bureau were unable to reach an agreement with respect to whether the expenses were reasonable and necessary, and that it would be up to a jury to resolve the issue. See *Nasser v Auto Club Ins Ass'n*, 435 Mich 33, 55; 457 NW2d 637 (1990) (stating that "whether expenses are reasonable and reasonably necessary is generally one of fact for the jury"). Hope acknowledged, when moving to amend its complaint to add the tortious interference claim against the MCCA, that it had been attempting to resolve the dispute with Farm Bureau "for months," and that the MCCA's alleged interference did not begin until after Hope filed this lawsuit against Farm Bureau.

Even accepting the factual allegations in the complaint as true, Hope did not allege that the MCCA committed an inherently wrongful act, and Hope failed to allege, with any degree of specificity, affirmative acts that the MCCA committed with the motive of interfering with Hope's business relationship or expectancy. Hope simply stated in its complaint that the MCCA refused to approve payment and/or threatened to withhold reimbursement to Farm Bureau and that these acts interfered with Hope's business relationship with Farm Bureau. The MCCA's alleged involvement with Farm Bureau with respect to Hope's claim, which was not supported by specific facts, was not so inherently wrongful that it could never be justified given the MCCA's power to step in before a settlement has been reached and adjust situations that it anticipates might otherwise expose it to unreasonable indemnification costs. See *Badiee*, 265 Mich App at 367. Therefore, Hope was required to allege in its complaint specific and affirmative acts that the MCCA intentionally committed in order to interfere with Hope's business relations or expectancy. See *CMI Int'l, Inc*, 251 Mich App at 131. Because Hope failed to make any specific allegations to demonstrate acts of unlawful interference, the trial court erred by failing to grant summary disposition on Hope's tortious interference claim under MCR 2.116(C)(8).

With respect to the fourth element, a plaintiff pleading a claim of tortious interference with a business relationship or expectancy must show that, as a result of the interference, the plaintiff has suffered damages. *Dalley*, 287 Mich App at 323. The "business expectancy" that Hope alleged to be interfered with was the payment of no-fault benefits for reasonable and necessary PIP expenses. The benefits were not paid, at least initially, because Farm Bureau disputed them. The MCCA had nothing to do with that decision. A jury will determine whether the expenses were reasonable and necessary. *Nasser*, 435 Mich at 55. Farm Bureau will be liable for the benefits that are legitimately due as determined by the jury. The MCCA, in turn, will be required to indemnify Farm Bureau "for 100% of the amount of ultimate loss sustained under personal protection insurance coverages in excess of" the applicable statutory threshold. MCL 500.3104(2). Thus, as a matter of law, Hope will receive 100 percent of the expenses that a jury concludes to be reasonable and reasonably necessary and, therefore, Hope would have no resultant damages as a result of the MCCA's alleged interference.

In its complaint, Hope simply alleged that its damages were "including, but not limited to, the costs of prosecuting the instant lawsuit." Attorney fees incurred in litigating a matter do not constitute "damages" unless a statute or court rule explicitly provides otherwise. See *Phinney v Perlmutter*, 222 Mich App 513, 560; 564 NW2d 532 (1997), impliedly overruled on other grounds by *Garg v Macomb Co Community Mental Health Servs*, 472 Mich 263, 290; 696 NW2d 646, amended 473 Mich 1205 (2005) (stating that "[a]wards of costs and attorney fees are recoverable only where specifically authorized by a statute, a court rule, or a recognized exception"); see also *Cooley v Mid-Century Ins Co*, 52 Mich App 612, 617; 218 NW2d 103 (1974) (explaining that "[a]s a general rule, our courts have refused to allow recovery of attorneys' fees, either as an element of the costs of the suit or as an item of damages, unless allowance of a fee is expressly authorized by

statute or court rule.") (quotation marks and citation omitted). A prevailing party recovers litigation costs and attorney fees not by claiming them as damages, but by persuading the trial court that one of the recognized exceptions justifies an award of such costs and fees. Because plaintiff's complaint failed to sufficiently plead the element of resultant damages, summary disposition under MCR 2.116(C)(8) was warranted for this reason as well.

If a motion for summary disposition is based on MCR 2.116(C)(8), "the court shall give the parties an opportunity to amend their pleadings as provided by MCR 2.118, unless the evidence then before the court shows that amendment would not be justified." MCR 2.116(I)(5). "The amendment of a pleading is properly deemed futile when, regardless of the substantive merits of the proposed amended pleading, the amendment is legally insufficient on its face." *Kostadinovski v Harrington*, 321 Mich App 736, 743-744; 909 NW2d 907 (2017). At the hearing on the MCCA's motion to dismiss, Hope cited the additional "delay" in the payment of no-fault benefits and "additional fees" and interest, as well as the costs of litigation, as damages. On the basis of the above analysis regarding resultant damages, we conclude as a matter of law that amendment of the complaint would be futile because Hope could not sufficiently allege resultant damages as a result of any alleged improper interference. [*Id*. at 5-7 (footnotes omitted).]

Applying the *Hope* decision to the present cases,[5] we conclude that the trial courts erred in denying MCCA's motions for summary disposition. As noted, "[t]he elements of tortious interference with a contract are (1) the existence of a contract, (2) a breach of the contract, and (3) an unjustified instigation of the breach by the defendant." *Knight Enterprises, Inc*, 299 Mich App at 279-280 (citation omitted). To support a claim of tortious interference with a contract, a plaintiff must allege the "intentional doing of a per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Derderian*, 263 Mich App at 382 (quotation marks and citation omitted). A wrongful per se act is defined as an act that "is inherently wrongful or an act that can never be justified under any circumstances." *Knight Enterprises, Inc*, 299 Mich App at 280 (quotation marks and citation omitted). If a defendant's conduct is not deemed wrongful per se, the plaintiff must allege specific, affirmative acts to corroborate the unlawful purpose of the interference. *Id*. Further, to support a claim of tortious interference with a contract, the defendant must unjustifiably

---

[5] We acknowledge that the claim raised in *Hope* was tortious interference with a business expectancy. Indeed, the Hope Network Rehabilitation Services entity was not a party to the insurance contract it sought to enforce, and it obtained its rights through the assignment from the insured Koyl. Although tortious interference with a contract is a cause of action distinct from tortious interference with a business relationship or expectancy, *Health Call of Detroit v Atrium Home & Health Care Servs, Inc*, 268 Mich App 83, 89; 706 NW2d 843 (2005), both actions require that the interference occur with malice and without justification, see *Derderian*, 263 Mich App at 382; *Mino v Clio Sch Dist*, 255 Mich App 60, 78; 661 NW2d 586 (2003). Accordingly, the specific type of action raised was not a distinction that precluded application of the *Hope* decision to the present case.

-8-

instigate or induce a party to breach its contract. *Id*. at 281. Liability will only be imposed if the defendant's purpose is to cause the result. *Id*.

However, the MCCA was established as an unincorporated, nonprofit association with the purpose of indemnifying insurers for PIP benefits that exceed a particular threshold. *USFIG*, 484 Mich at 18. MCCA must establish procedures for members to promptly report each claim that may involve the association, MCL 500.3104(7)(b), maintain loss and expense data pertaining to all liabilities of the MCCA and require members to provide statistics, MCL 500.3104(7)(c), and calculate and charge association members a premium sufficient to cover expected losses and expenses, MCL 500.3104(7)(d). MCCA also must establish "procedures for reviewing claims procedures and practices of members of the association." MCL 500.3104(7)(g).

Contrary to Mapson's and Bouchard's assertions, MCCA did not engage in a "per se wrongful act or the doing of a lawful act with malice and unjustified in law for the purpose of invading the contractual rights or business relationship of another." *Derderian*, 263 Mich App at 382. Rather, MCCA was charged with maintaining the financial soundness of the member association and was given statutory authority to establish procedures to review claims. Further, to support a claim of tortious interference with a contract, the defendant must unjustifiably instigate or induce a party to breach its contract. *Knight Enterprises, Inc*, 299 Mich App at 281 (quotation marks and citation omitted). *Id*. at 281. There is no contention that the preapproval process of a claim by MCCA was unjustifiably instigated or induced Farmers to breach its insurance contract with either plaintiff. Moreover, there is no assertion that MCCA's purpose was to cause the rejection of negotiated settlements between Mapson and Farmers and Bouchard and Farmers. Rather, the Legislature authorized the MCCA to develop policies and procedures, to maintain statistical data, and to cause member insurers to report their claims to ensure the financial viability of the no-fault system. See *USFIG*, 484 Mich at 6; MCL 500.3104(7).

Indeed, Mapson and Bouchard did not assert that MCCA's preapproval process was designed with the nefarious purpose of rejecting negotiated settlements or rendering PIP benefit payments unreasonable. Rather, Mapson seemingly alleged that MCCA acted contrary to and misconstrued the *USFIG* decision as well as the statutory provisions within the no-fault act. But a misconstruction of caselaw or statutory authority does not rise to the level of unjustifiably instigation or inducement to breach a contract. Accordingly, the trial courts erred in denying MCCA's motion for summary disposition of Mapson's and Bouchard's claims of tortious interference with a contract. The monitoring of the insurance members and preapproval process for claims by MCCA failed to state a claim of tortious interference of a contract.

Furthermore, to support the claim of civil conspiracy, Mapson was required to assert some underlying tortious conduct. *Urbain*, 301 Mich App at 132. "[A] claim for civil conspiracy may not exist in the air; rather it is necessary to prove a separate, actionable tort." *Advocacy Org for Patients & Providers*, 257 Mich App at 384. Thus, when a plaintiff failed to state a prima facie case of tortious interference, the conspiracy claim also failed. See *id*. Because Mapson failed to state a claim of tortious interference premised on MCCA's performance of its duties as set forth by statute and its plan of operation, his claim of civil conspiracy also failed. Accordingly, the trial

courts' orders denying MCCA's motions for summary disposition are reversed, and the cases remanded for entry of orders granting summary disposition in favor of MCCA.

Reversed and remanded for proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ Anica Letica
/s/ Christopher M. Murray
/s/ Sima G. Patel